[Sac. No. 1907.   Department Two.—March 6, 1912.]

FRANK H. BUCK COMPANY (a Corporation), Respondent,
v. F. M. BUCK and EDITH A. BUCK, Respondents;
CALIFORNIA FRUIT EXCHANGE, Appellant.

Mortgage Securing Future Advances — Payment — Extinguishment of Lien — Occasional Balance to Credit of Mortgagor in Running Account. — The lien of a mortgage given to secure a specified present indebtedness and also future advances to the mortgagor, and which contains a provision avoiding it upon the payment of all sums due or that may become due to the mortgagee, is not extinguished by the mere accidental circumstance that on one or two occasions during the continuance of an unbalanced running account between the parties there was a credit in favor of the mortgagor.

Id.—Mortgagor Should Notify Mortgagee of Intention to Consider Credit in His Favor as Extinguishment.—Under such circumstances, equity demands, so far as the mortgagor is concerned, that if he has knowledge of the state of the account and intends to cause the mortgage to be cancelled and treated no longer as security for advances made to him, he should so notify the mortgagee. Not having done so, he will not be allowed to treat the mortgage as canceled.

Id.—Unmatured Promissory Notes Held by Mortgagee.—The fact that the mortgagee held promissory notes of the mortgagor, which by their terms did not mature until after the date when the balance of the account stood in favor of the mortgagor, operated to prevent the lien of the mortgage from being extinguished, notwithstanding the mortgagee had charged the amount of such notes to the mortgagor's account at the time the advances evidenced thereby were made.

Id.—Payment Made by Mortgagee as Guarantor for Mortgagor.—A payment made by the mortgagee in settlement of an indebtedness due by the mortgagor to a third person, which had been guaranteed by the mortgagee at the request of the mortgagor, should be considered as an advancement to the mortgagor under the terms of the mortgage.

Id.—Mortgage Need not State Amount of Advances.—A mortgage to secure future advances is not rendered invalid by reason of its failure to state the total amount of future advances for which it is to create a lien upon the mortgagor's property.

Id.—Sufficiency of Statement as to Future Advances.—In the absence of statutes providing otherwise, a definite statement of the amount of future advances is unnecessary, and all that is necessary is that a mortgage designed to secure such future liabilities should

describe the nature and amount of them with reasonable certainty, so that they may be ascertained by the exercise of ordinary diligence on proper inquiry.

APPEAL from a judgment of the Superior Court of Solano County and from an order refusing a new trial. A. J. Buckles, Judge.

The facts are stated in the opinion of the court.

A. L. Shinn, C. F. Stewart, C. L. Shinn, Frank R. Devlin, and C. G. Shinn, for Appellant.

Wm. M. Sims, T. T. C. Gregory, and Frank H. Buck, Jr., for Respondents.

HENSHAW, J.—Appellant, California Fruit Exchange, a corporation, is the mortgagee of a recorded crop mortgage executed to it by respondent F. M. Buck. It claims priority of right and lien by virtue of this crop mortgage and by virtue of an unrecorded crop contract also executed to it by F. M. Buck, over a subsequent chattel mortgage executed by F. M. Buck to respondent Frank H. Buck Company, a corporation. The action was commenced by the Frank H. Buck Company to foreclose its chattel mortgage for the sum of fifteen thousand dollars and for a decree establishing its priority of right over the California Fruit Exchange contracts. Frank M. Buck suffered default, judgment passed for plaintiff as prayed for, and from that judgment and from the order denying its motion for a new trial the California Fruit Exchange appeals.

The facts disclosed are the following: In December, 1905, F. M. Buck executed to the appellant a mortgage upon the crops of fruit "now standing and growing and that may hereafter be grown upon my farm and orchard comprising 140 acres in Solano County." The mortgage was given to secure an indebtedness of twenty-five hundred dollars. It contained an added provision as follows: "Provided, nevertheless, and these presents are upon the express condition that if the said party of the first part, his heirs, executors, administrators or assigns, shall well and truly pay, or cause to be paid unto the said party of the second part, its successors or

assigns, all sums of money that are now due, or that may hereafter become due, from the party of the first part to the party of the second part, then these presents shall be void. It is the purpose of this mortgage to secure future advances to, as well as the present indebtedness of, the party of the first part." It likewise contained a covenant upon the part of the mortgagor to deliver the crops grown on the land to the mortgagee to be marketed. This mortgage was duly recorded. Under it appellant marketed the crops and credited them to the account of Buck, and also made numerous advances of money to Buck, many of which were evidenced by his promissory notes. In December, 1906, Buck requested appellant to assist him in obtaining a loan of three thousand dollars from the Fort Sutter National Bank of Sacramento, appellant did so assist and Buck secured the money upon the guaranty by the appellant of the loan. This note was a demand note. No part of the interest was paid by Buck. Appellant paid it all, and finally paid the principal on September 27, 1907. At the trial an expert employed to examine into and report upon the condition of Buck's account with appellant as disclosed by the appellant's books, reported in effect that the books showed a continuous balance against Buck, excepting that on September 15, 1907, there appeared upon the books a sum to the credit of Buck greater than the debits in the amount of $442.32, and on September 21, 1907, appeared an amount so in excess of the debits in the sum of $1,238.44. As between the parties, however, no balance had been struck by the appellant, no statement had been made to Buck, and there were promissory notes from Buck to appellant which were not yet due upon either of these dates. Buck continued as before to receive advances from and to request payments of money to be made by appellant, and the condition of the account from one of apparent credit to one of actual debit was speedily changed. Thus on September 27th there was the payment of three thousand dollars on the promissory note guaranteed by appellant. On October 4th following five hundred and fifty dollars was paid out by appellant on Buck's account, on October 8th in like manner seven hundred and fifty dollars, on October 25th, seventy dollars, and on October 26th, one thousand and seventy-eight dollars. Thereafter the transactions between Buck and appellant con-

tinued apparently as before until October 27, 1908, when, by reason of such advances, Buck was indebted to appellant in the sum of $5,447.70. On May 19, 1909, Buck executed the chattel mortgage to the plaintiff in the sum of fifteen thousand dollars, for the foreclosure of which in the full amount this action was brought.

The court found the indebtedness from Buck to appellant of $5,447.70, above mentioned, but determined that this sum was not secured by appellant's mortgage. The soundness of this determination presents the principal question in controversy. The court's determination in this regard was based upon the language of the mortgage, "that if all sums due shall be paid, then these presents shall be void," taken with section 2909 of the Civil Code, to the effect that a lien is extinguishable in like manner with any other accessory obligation. The court concluded that as the books of appellant showed a balance in favor of Buck on September 15, 1907, the mortgage had been paid and in effect canceled and that the future advances made by appellant to Buck were made without the security of the mortgage. The reasoning of the trial court would unquestionably be sound had the mortgage been given for but a single existing debt or obligation. The payment of that debt or the extinguishment of that obligation would indisputably operate to release the lien of the mortgage. Nor could such a lien be recreated without a new agreement between the parties. Such, however, were not the terms and conditions of this mortgage. It was a mortgage creating a lien for future as well as past advances. The very section of the code declares that a lien "may be created by contract to take immediate effect as security for the performance of obligations not then in existence." (Civ. Code, sec. 2884.) The mortgage in terms declared that it was security for "all sums of money that are now due or that may hereafter become due" and that "it is the purpose of this mortgage to secure future advances to as well as the present indebtedness of the party of the first part." Under such a mortgage, designed by its very terms to be of indefinite continuance and to afford the mortgagee security for his future advances to the mortgagor, much more is required for the extinguishment of the lien than the mere accidental circumstance that the books of one or another of the parties show a balance in favor of the

mortgagor upon a given date. The plainest considerations of equity demand, so far as the mortgagor is concerned, that if he has knowledge of this and intends to cause the mortgage to be canceled and treated no longer as security for advances made to him, he should so notify the mortgagee. Otherwise equity would be countenancing the palpable fraud of permitting the mortgagor to borrow moneys upon the security of a mortgage which the mortgagee believed to be valid and existent, but which the mortgagor, at some future time when it suited his convenience, was to be permitted to say had been extinguished. Unquestionably then if Buck did know that the books upon September 15th or September 21st showed a balance in his favor and he meant to take advantage of this fact by declaring the mortgage canceled, it was his duty, before seeking further advances, so to have notified his mortgagee. Not having done so, he will not be allowed to profit by his silence, for it is not for a moment to be supposed, nor even is it contended, that the appellant made these later advances, aggregating over five thousand dollars, other than upon the faith of the mortgage security, or that it would have advanced one dollar had it been notified that the mortgage security was by Buck regarded as at an end. The controlling principles governing a mortgage such as this for future advances are well set forth in the American & English Encyclopedia of Law (vol. 20, 2d ed., pp. 962, 1055) : "A mortgage given to secure an existing indebtedness and also such other indebtedness as might afterwards accrue from sales of goods to the mortgagor, is, as regards future liabilities, a security by way of continuing guaranty under which the mortgagee has an implied authority to sell, trusting to his security, until revocation. And even where a mortgage has been in form extinguished, by payment or otherwise, equity will keep it alive or consider it extinguished as will best subserve the interest of justice and the actual and just intent of the parties."

Aside from these general equitable considerations which forbid that the mortgage should be treated as extinguished, the same matter regarded from a narrower point of view equally establishes the unsoundness of the trial court's conclusion. Thus, it is shown that Buck had given a number of promissory notes to appellant which by their terms became

due after the date when, as the court found, there was a balance in favor of Buck and the mortgage lien therefore came to an end. Whatever moneys Buck may have had to his credit in the hands of the appellant could not be applied as an offset, without Buck's consent, to those notes before their maturity. (*McKean* v. *German-American Bank,* 118 Cal. 334, [50 Pac. 656].) Nor did the fact that the appellant had charged the amount of these notes to Buck's account at the time of the advances affect this principle. Under the written contract of the parties evidenced by the notes, these sums were not due until the maturity of the notes, and when the notes did in fact mature the balance was heavily against Buck upon his account.

No well-grounded reason can be advanced why the payment of the three thousand dollars to the Sutter National Bank under the appellant's guaranty should not be made a charge against Buck under the mortgage lien. The evidence discloses that Buck applied to appellant for this loan, that appellant felt unable to advance the money to Buck directly at that time, and secured the money for him from the Sutter Bank by guaranteeing his indebtedness. The guaranty was an independent obligation. The appellant did not become a mere surety and was in no sense a volunteer in paying the debt, the very interest upon which it had been compelled to meet. If the appellant had advanced the money directly to Buck no question would arise, but that the advancement would be secured under the terms of the mortgage. The advances thus indirectly made by the Sutter Bank and afterward taken over by appellant through its payment to that bank in no material sense changed the nature of the transaction.

Respondent contends that the mortgage is void in that it does not state the total amount of future advances for which it is to create a lien upon the mortgagor's property. This contention finds support in the language of *Tully* v. *Harloe,* 35 Cal. 302, [95 Am. Dec. 102], but the language there used was not necessary to the decision, and the decision itself, upon this proposition, has never been affirmed. That there is a diversity of opinion upon the subject may be conceded, but the correct rule as declared by the American & English Encyclopedia of Law (vol. 20, p. 927), is: "Whether the ultimate amount intended to be secured should be definitely stated on the face of the instrument is a question upon which there

is considerable diversity of opinion, but the weight of authority sustains the principle that in the absence of statutes providing otherwise a definite statement of amount is unnecessary and that all that can be required is that a mortgage designed to secure such future liabilities should describe the nature and amount of them with reasonable certainty, so that they may be ascertained by the exercise of ordinary diligence on proper inquiry, the jurisdictions holding that the maximum amount intended to be secured should be stated being in the minority." This court has adopted that rule and has so expressed itself in *Tapia* v. *Demartini,* 77 Cal. 383, [11 Am. St. Rep. 288, 19 Pac. 641], where it is said: "If the mortgage discloses upon its face that it is to stand as security for future advancements, the amount of the advances to be made need not be set out. It is sufficiently definite to put subsequent encumbrancers on inquiry, and they must ascertain the extent of the lien, or suffer the consequences." This principle finds support in *Witczinski* v. *Everman,* 51 Miss. 841; *Lovelace* v. *Webb,* 62 Ala. 271; *Ackerman* v. *Hunsicker,* 85 N. Y. 43, [39 Am. Rep. 641].) Moreover, even under the rule contended for by respondent, the advances made by appellant to Buck having been extended before plaintiff's mortgage was given, are secured by the lien of appellant's mortgage. Thus Jones lays down the rule (1 Jones on Mortgages, sec. 364) as follows: "But even where a limitation is necessary in order to constitute a continuing security which will not be affected by subsequent conveyances, a recorded mortgage for an unlimited sum is notice to a subsequent encumbrancer as to all sums advanced upon the mortgage before the subsequent lien attaches."

The foregoing renders unnecessary a discussion of any of the questions advanced upon the second branch of this case—that of the priority of the lien of the unrecorded crop contract over the subsequently executed chattel mortgage to plaintiff.

For the reasons already given, the judgment, in so far as it affects the California Fruit Exchange, appellant herein, is reversed and the cause remanded.

Lorigan, J., and Melvin, J., concurred.

Hearing in Bank denied.