Filed 3/1/17 Unmodified opinion attached

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| BANK OF NEW YORK MELLON,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CITIBANK, N.A.,<br><br>Defendant and Respondent. | B262899<br><br>(Los Angeles County<br>Super. Ct. No. SC120390)<br><br>MODIFICATION ORDER<br>[NO CHANGE IN<br>JUDGMENT] |


THE COURT:*

It is ordered that the opinion filed on February 16, 2017, be modified as follows:

On the caption page, the attorney listing for Plaintiff and Appellant Bank of New York Mellon shall be changed to

read: "Garrett & Tully, Ryan C. Squire, Zi C. Lin and John C. Tully, for Plaintiff and Appellant."

This modification does not change the judgment.

_____

*EPSTEIN, P. J.        WILLHITE, J.        COLLINS, J.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BANK OF NEW YORK MELLON, | B262899 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC120390) |
| v. | |
| CITIBANK, N.A., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Allan J. Goodman and H. Chester Horn, Judges.  Reversed and remanded.

Garrett & Tully, Ryan C. Squire and John C. Tully, for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup and Daniel G. Bath, for Defendant and Respondent.

———————————————

Bank of New York Melon appeals from the judgment of dismissal of its lawsuit against respondent Citibank, N.A. The case arose out of the simultaneous refinancing of a home equity line of credit by two different lenders in 2006, which resulted in a dispute over the priority of their recorded deeds of trust.  Appellant challenges the orders sustaining respondent's demurrers to appellant's first and second amended complaints.  The demurrers alleged that all of appellant's causes of action were barred by the three-year statute of limitations in Code of Civil Procedure section 338 (hereafter, section 338).  We reverse the judgment because appellant has stated a claim for equitable subrogation, which is not subject to that statute.

## FACTUAL AND PROCEDURAL SUMMARY

In May 2005, respondent's predecessor in interest, Citibank (West) FSB (hereafter, Citibank West) issued a home equity line of credit of up to $500,000 (hereafter, first line of credit) to James and Cathleen Lima and recorded a deed of trust securing that line of credit against the Limas' home in Pacific Palisades.

In January 2006, the Limas simultaneously negotiated a refinancing of the first line of credit with both Citibank West and appellant's predecessor in interest, Countrywide

2

Home Loans, Inc. (hereafter, Countrywide)  First American Lenders Advantage (hereafter, First American) was Countrywide's escrow agent for the refinancing.  The agreement with the Limas was that Countrywide would pay off Citibank West's first line of credit, obtain a reconveyance of Citibank West's deed of trust, and receive a second deed of trust on the property as security for its loan.[1]  Unbeknownst to Countrywide, on January 17, 2006, the Limas signed loan documents to refinance the first line of credit with a new line of credit from Citibank West (hereafter, second line of credit).  The second line of credit had a limit of up to $600,000 and was secured by a deed of trust recorded on January 31, 2006.

On January 19, 2006, Citibank West issued a payoff statement for $508,527.65, without disclosing that the first line of credit was being refinanced.  The payoff statement indicated that the account on the first line of credit had been "frozen."  The instruction sheet accompanying the statement specified that an enclosed "close/termination letter" was to "accompany the payoff funds in order to acquire a release of lien.  If this letter is not returned with the payoff funds, the line will remain OPEN and will be considered a paydown only."  The termination letter similarly directed the borrowers to request "that the account be closed and the lien

---

[1] The first deed of trust on the property is held by a non-party to this action.

released along with your payoff to ensure proper processing of your transaction."

The Limas' February 7, 2006 loan application to Countrywide sought a line of credit of up to $1 million. It disclosed Citibank West's first, but not its second, line of credit. The second line of credit was not picked up in the preliminary title report on which Countrywide relied. Also on February 7, the Limas executed a line of credit agreement and deed of trust in favor of Countrywide. Countrywide recorded its deed of trust on the Limas' property on February 13, 2006, the day escrow closed on its line of credit. The next day, First American disbursed the $508,567.65 payoff to Citibank West, $181,289.35 in cash to the Limas, and the remaining funds to other creditors of the Limas. First American transferred the Limas' signed termination letter to Citibank West. The letter instructed the bank to close the first line of credit, which was identified by its account number.

In March 2006, Citibank West returned the $508,567.65 payoff amount to First American, notifying it that the first line of credit had been closed. At First American's request, Citibank West issued a payoff statement for the second line of credit in the amount of $612,513.98. Like the first, the second payoff statement indicated that the relevant account was frozen and warned that the line of credit would remain open unless the Limas submitted a signed termination letter with their payoff. After negotiating down the amount due on the second line of

4

credit, First American obtained a partial refund from the Limas and disbursed $599,567.65 to Citibank West; as a result, Citibank West reduced the account balance on the second line of credit to zero. The Limas did not sign the termination letter that accompanied Citibank West's payoff statement as to the second line of credit, and Citibank West did not close that account and did not reconvey the deed of trust by which it was secured.

In 2007, the Limas borrowed $600,000 on their second line of credit with Citibank West. In January 2011, Citibank West's trustee issued a notice of default and election to sell the Limas' home. In March 2013, appellant filed this action against Citibank West and the Limas. The first amended complaint substituted respondent as Citibank West's successor in interest. Against respondent, appellant asserted claims for declaratory relief based on violation of statute or statutory subordination (Civ. Code, § 2943), equitable subordination or subrogation, unjust enrichment, and constructive fraud; against the Limas, it asserted a claim of actual fraud.

Respondent demurred on the sole ground that all causes of action were barred by the three-year statute of limitations in section 338, subdivisions (a) (violation of duty imposed by statute) and (d) (fraud or mistake). Appellant opposed the demurrer, arguing that Citibank West's lien was discharged by operation of law, that there was no actual controversy until respondent claimed priority in 2011 and appellant discovered its claims for fraud and unjust

5

enrichment, and that the 10- or 60-year statute of limitations for enforcing a power of sale in a deed of trust (Civ. Code, § 882.020) applied to its equitable subrogation and subordination claims.

The court, Judge Allan J. Goodman, ruled Civil Code section 882.020 did not apply because appellant's claims were not based on the power of sale in a deed of trust, and the first amended complaint did not plead facts consistent with delayed discovery. The court sustained the demurrer as to all causes of action and allowed amendment only as to the causes of action for unjust enrichment and fraud.

Accordingly, the only causes of action asserted against respondent in the second amended complaint were for unjust enrichment and constructive fraud. For the first time in that complaint, appellant alleged that First American "and its escrow officer were not agents of Countrywide in undertaking actions [to pay off the second line of credit], without Countrywide's knowledge and authorization, after the Countrywide loan closed and after the Countrywide deed of trust was recorded." Once again, respondent demurred on statute of limitation grounds, and the court, Judge H. Chester Horn, sustained the demurrer without leave to amend. The court rejected appellant's attempt to plead around its original allegations in order to bring its claims within the delayed discovery rule.

This appeal followed the entry of judgment dismissing respondent from the action.

6

# DISCUSSION

We review a ruling on demurrer de novo to determine whether the complaint states a cause of action under any legal theory.  (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38.)  In doing so, we are not bound by the trial court's reasoning and may consider new legal theories or pure questions of law presented by undisputed facts for the first time on appeal.  (*Pierce v. San Mateo County Sheriff's Dept.* (2014) 232 Cal.App.4th 995, 1006; *B & P Development Corp. v. City of Saratoga* (1986) 185 Cal.App.3d 949, 959.)

We construe the complaint liberally, take all properly pled facts as true, and draw all reasonable inferences in favor of the plaintiff.  (*Coleman v. Medtronic, Inc.* (2014) 223 Cal.App.4th 413, 422; *Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1034.)  Inconsistent allegations in amended complaints are disregarded unless the inconsistency is explained.  (*Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447.)  Exhibits attached to the complaint take precedence to the extent they contradict allegations in the complaint.  (*Ibid.*)

To determine which statute of limitations applies to a particular action, we consider the "gravamen" of the action rather than its form or the relief demanded.  (*Yee v. Cheung* (2013) 220 Cal.App.4th 184, 194.)  The gravamen of an action depends on the nature of the right sued upon or the principal purpose of the action.  (*Davies v. Krasna* (1975) 14 Cal.3d 502, 515.)

7

# I

Contrary to respondent's perception, appellant has not abandoned the claims in its first amended complaint, to which respondent's first demurrer was sustained without leave to amend. Appellant's opening brief makes clear that it challenges the sustaining of both demurrers on the ground that the three-year statute of limitations in section 338 does not apply to any of its claims. We, therefore, consider whether section 338 applies to the claims for declaratory relief asserted in the first amended complaint.

A claim for declaratory relief is subject to the same statute of limitations as the legal or equitable claim on which it is based. (*Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1155.) Appellant argues that because it seeks a declaration of its interest in the Limas' property, the claims for declaratory relief in effect seek to quiet title to that property and are not subject to a statute of limitations. It derives that proposition from the dissent in *Ephraim v. Metropolitan Trust Co. of Cal.* (1946) 28 Cal.2d 824. (*Id.* at p. 839 (dis. opn. of Carter, J.).) That is not the modern rule. The majority in *Ephraim* held that where quiet title depends upon another claim, it must stand or fall on that claim. (*See id.* at p. 833; see also *Leeper v. Beltrami* (1959) 53 Cal.2d 195, 214 ["the modern tendency is to look beyond the relief sought, and to view the matter from the basic cause of action giving rise to the plaintiff's right to relief"].) Thus, the statute of limitations on a quiet title action is determined with reference to the underlying theory of relief. (*Muktarian*

8

*v. Barmby* (1965) 63 Cal.2d 558, 560; *Salazar v. Thomas* (2015) 236 Cal.App.4th 467, 476.)  We, therefore, examine the theories underlying the claims for declaratory relief.

   *A. Statutory Subordination*

In the first amended complaint, appellant asserted a claim variously titled as "VIOLATION OF STATUTORY OBLIGATIONS" and "Declaratory relief re Statutory Subordination of Trust Deed."  The claim was based on the following allegations:  under Civil Code section 2943, subdivisions (a)(5) and (d)(1), Countrywide and its escrow agent were entitled to rely on Citibank's January 19, 2006 statement to determine the payoff amount for 30 days following the date of that statement; under Civil Code section 2941, Citibank was "obligated by statute" to reconvey the deed of trust within 30 days of receiving Countrywide's payoff on March 17, 2006; and under Civil Code section 2943, subdivision (d)(3) any amount the borrower owed to the lender that was not included in the payoff statement became an "unsecured obligation."  Based on these allegations, appellant requested a declaration that its deed of trust was senior to respondent's, to the extent respondent had a valid security interest at all.

Respondent demurred under section 338, subdivision (a) on the ground that appellant's claim was based on a violation of a duty imposed by statute.  In opposition, appellant retreated from its theory that Citibank West violated its statutory duty to reconvey and argued instead, as it does on appeal, that a reconveyance was not even

9

necessary because Citibank West's lien on the second line of credit was automatically extinguished at payoff. According to appellant, the essence of its theory of statutory subordination is that its deed of trust has priority "by operation of law."

We are not convinced that appellant's claim to lien priority sounds in law. "'California follows the 'first in time, first in right' system of lien priorities. ([Civ. Code,] § 2897.)' (*Thaler v. Household Finance Corp.* (2000) 80 Cal.App.4th 1093, 1099.) However, that rule is not without exceptions. '*Other things being equal*, different liens upon the same property have priority according to the time of their creation . . . .' (Civ.Code, § 2897, italics added.) It appears the Legislature used the words 'other things being equal' to refer to the equities involved in a competing liens situation." (*JP Morgan Chase Bank, N.A. v. Banc of America Practice Solutions, Inc.* (2012) 209 Cal.App.4th 855, 860.)

Appellant relies on Civil Code sections 2941 and 2943, but those provisions do not establish the priority of its lien as a matter of law.

Under Civil Code section 2943, subdivision (a)(5), a payoff statement must set forth the amounts required "to fully satisfy all obligations secured by the loan that is the subject of [that] statement." Such a statement may be relied on "in accordance with its terms." (*Id.*, § 2943, subd. (d)(1).) "[A]ny sums that were due and for any reason not included in the statement" are "recoverable by the beneficiary as an unsecured obligation." (*Id.*, § 2943, subd. (d)(3).) The

10

provision that a deficiency in the payoff of a loan is no longer secured is a departure from the common law, which allowed reinstatement of an erroneously retired loan. (See *Freedom Financial Thrift & Loan v. Golden Pacific Bank* (1993) 20 Cal.App.4th 1305, 1314–1315, disapproved on another ground in *Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 53, fn. 5.)

Civil Code section 2943, subdivision (d)(3) has no bearing on appellant's claim. Citibank West issued the January 2006 payoff statement as to its first line of credit. Any amounts that may have been due on Citibank West's second line of credit were not required to be included in it because that loan was not the subject of the payoff statement. Moreover, any future advances on the second line of credit could not have been due at all before they were made, let alone be due on the first line of credit. Appellant cannot claim that the second line of credit became unsecured by virtue of the payoff statement issued on the first line of credit.

The other statute on which appellant relies, Civil Code section 2941, does not provide for lien priority at all. It establishes deadlines and procedures for the reconveyance of a lien after a mortgage has been satisfied and provides for damages and a penalty. (*Id.*, § 2941, subd. (d).) Appellant denies seeking damages arising from Citibank West's failure to record a reconveyance. Civil Code section 2941 makes no exception for lines of credit, and its procedures have been

11

applied to such loans.  (See *Serafin v. First Interstate Bank* (1997) 58 Cal.App.4th 785, 787, 790–796, superseded by statute on another ground as stated in *Markowitz v. Fidelity Nat. Title Co.* (2006) 142 Cal.App.4th 508, 524–525.) However, nothing in the statute requires that a mortgage be considered satisfied in all cases where the debt is reduced to zero; nor is there support for such a blanket rule at common law.

It is true that "[a] security interest cannot exist without an underlying obligation, and therefore a mortgage or deed of trust is *generally* extinguished by either payment or sale of the property in an amount which satisfies the lien. [Citations.]"  (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1235, italics added.)  However, it has long been recognized that whether the payment of a debt operates to release the lien of a mortgage depends on the mortgage's terms and conditions.  (See *Frank H. Buck Co. v. Buck* (1912) 162 Cal. 300, 303, superseded by statute on another ground as stated in *Equitable Plan Co. v. Dix Box Co.* (1958) 163 Cal.App.2d 705, 708.)  When a mortgage is "designed by its very terms . . . to afford the mortgagee security for his future advances to the mortgagor, much more is required for the extinguishment of the lien than the mere accidental circumstance that the books of one or another of the parties show a balance in favor of the mortgagor upon a given date." (*Frank H. Buck Co.*, at p. 303–304; see also Rest.3d Property, Mortgages, § 6.4, com. e, p. 428 [principle that mortgage is not extinguished on payment of debt if loan or payment

12

documents provide to the contrary is most commonly applied to line-of-credit loans].)

Here, Citibank West's deed of trust on the second line of credit expressly secures future loan advances and provides that the lien will be released upon payment of all obligations, *and* upon the expiration of the agreement or upon the borrower's request.  Accordingly, the instructions accompanying each of Citibank West's payoff statements required that the borrowers sign a termination letter, and warned that the payoff would otherwise be considered a paydown.  Appellant's own exhibits indicate that the termination letter accompanying the March 2006 payoff statement on the second line of credit was not signed by the borrowers.

Appellant argues that the payoff statement was misleading in several respects—for example, because it indicated the account was "frozen," even though the termination letter required the borrowers' authorization to "freeze/close the account."  Appellant also argues Citibank West did not strictly enforce the terms of its payoff statement because it accepted a payoff amount lower than the one listed on the statement.  Assuming these arguments support a claim of equitable estoppel against respondent, they nevertheless fail to support a claim to statutory lien priority as a matter of law.  (See *Vu v. Prudential Property & Casualty Ins. Co.* (2001) 26 Cal.4th 1142, 1152–1153 [claim of equitable estoppel arises where a ""party has been induced to *refrain* from using such means or taking such

13

action as lay in his power, by which [it] might have retrieved [its] position and saved [it]self from loss"'"]; *City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 481 [claim of equitable estoppel sounds in equity].)

Appellant calls our attention to Civil Code section 2943.1, enacted in 2014 through Assembly Bill No. 1770 to codify a procedure for closing lines of credit, similar to the one Citibank West had in place in 2006.  The new statute provides that a lender must close the line of credit and release the lien on the property upon receipt of a payoff *and* written instructions from the borrowers to suspend and close the line of credit.  (*Id.*, § 2943.1, subds. (c)-(d).)  Appellant requsts that we take judicial notice of the legislative history of this statute, and contends that, before the enactment of section 2943.1, liens securing lines of credit were automatically extinguished upon payoff by operation of law.  We grant the request for judicial notice, but disagree with appellant's contention.

The problem presented to the Legislature was that when an equity line of credit is not shut down by the borrower during the sale of a property, "the underlying lien and loan become the debt of the innocent buyer."  (See Assem. Floor Analysis, Sen. Conc. Amends. to Assem. Bill No. 1770 (2013–2014 Reg. Sess.) as amended July 1, 2014, p. 2.)  That is because "the lien follows the real property unless it is extinguished." (*Ibid.*)  The Legislature intended to standardize the process for terminating a line of credit so

14

that it "will not inadvertently become the liability of the subsequent homeowner." (*Ibid.*)

The Legislature recognized that the problem was due to the automated processing of payoff statements and the lenders' refusal to close lines of credit without instructions from the borrowers to do so. Where a property was in the process of being sold to a new owner or refinanced with a lender who expected to have a first lien position, the failure to close an existing line of credit resulted in the new owner or lender "being subject to an apparent prior lien." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Assem. Bill No. 1770 (2013–2014 Reg. Sess.), as amended July 1, 2014, p. 5.)

Nothing in the bill analyses on which appellant relies suggests that, under the law existing before the enactment of Civil Code section 2943.1, the lien on a line of credit was automatically extinguished on payoff by operation of law. To the contrary, the problem was that the lien continued to encumber the property, causing problems for subsequent owners and lenders.

The priority of liens in that situation is determined not at law, but in equity, under the doctrine of equitable subrogation, which admittedly is the gravamen of appellant's action. We examine appellant's request for declaratory relief regarding the priority of its lien under that doctrine next.

15

## B. Equitable Subrogation

The doctrine of equitable subrogation implies a right to recover from the principal debtor when the subrogee pays the debtor's obligation to a creditor in order to protect the subrogee's own interest. (See generally 13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 183, pp. 514–515, and cases cited.) The doctrine most typically applies in insurance cases but is not limited to that context. (*Id.*, §§ 183–185, at pp. 514–519.)

As applied in the real property context, equitable subrogation provides an exception to the "first in time, first in right" system of lien priorities where equity requires a different result. (*JP Morgan Chase Bank, N.A. v. Banc of America Practice Solutions, Inc.*, *supra*, 209 Cal.App.4th at p. 860; see also *Branscomb v. JPMorgan Chase Bank N.A.* (2014) 223 Cal.App.4th 801, 806.) When a lender "'advances money to pay off an encumbrance on realty at the instance of either the owner of the property or the holder of the encumbrance, either on the express understanding, or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property,'" and "'the new security is for any reason not a first lien on the property,'" then the lender who holds that security, "'if not chargeable with culpable and inexcusable neglect, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equities of others would be prejudiced thereby.'" (*Simon Newman Co. v. Fink* (1928) 206 Cal. 143,

146.) In short, equitable subrogation allows a lender who pays off a borrower's debt to a creditor "'to succeed to the rights and remedies of the creditor so paid.'" (*Ibid.*)

The right of subrogation is purely derivative: a party entitled to subrogation has the same rights as an assignee of the creditor's claim, must stand in the creditor's shoes, and is subject to the same defenses. (*Fireman's Fund Ins. Co. v. Maryland Cas. Co.* (1998) 65 Cal.App.4th 1279, 1292.) A claim for equitable subrogation is subject to the statute of limitations that applies to the right to which the claimant is subrogated. (See, e.g., *Valley Crest Landscape Development, Inc. v. Mission Pools of Escondido, Inc.* (2015) 238 Cal.App.4th 468, 481 [equitable subrogation claim based on contractual indemnity subject to statute of limitations for breach of written contract].) In other words, "equity will enforce subrogation only when the action is brought within the time in which an action could have been brought to enforce the original obligation to which the right of subrogation is sought." (*Howell v. Dowling* (1942) 52 Cal.App.2d 487, 498.)

Here, appellant seeks to be subrogated to respondent's position of priority by virtue of its payoff of the second line of credit, which would allow it to assert Citibank West's right under the January 31, 2006 deed of trust securing that line of credit. (See *Simon Newman Co. v. Fink*, *supra*, 206 Cal. at p. 146 [holder of new security who pays off prior creditor will be subrogated to that creditor's rights under that creditor's security].) Because appellant's right is derivative,

17

it is governed by the statute of limitations that would apply to respondent's rights under the January 31, 2006 deed of trust.

In the trial court, appellant argued that the equitable subrogation claim was subject to the statute of limitations in Civil Code section 882.020, which applies to the right to proceed under a power of sale in a deed of trust whether or not enforcement of the debt itself is barred. (*Miller v. Provost* (1994) 26 Cal.App.4th 1703, 1708.) Under that statute, a deed of trust expires 10 years after the maturity date of the obligation if that date "is ascertainable from the recorded evidence of indebtedness," or 60 years after recordation of the deed, if "the last date fixed for payment of the debt . . . is not ascertainable from the recorded evidence of indebtedness." (Civ. Code, § 882.020, subd. (a)(1) & (2); *Miller*, at pp. 1708–1709.)

Neither party briefed Civil Code section 882.020 on appeal. When asked to do so, appellant submitted a supplemental brief, which suggested in part that appellant had abandoned its reliance on Civil Code section 882.020 in favor of other arguments. Appellant argued that it did not seek to "revive" respondent's lien, which it assumed was extinguished by operation of law, allowing its own lien to move into a position of priority. But even were the deed of trust securing the second line of credit extinguished, equitable subrogation "'will set aside a cancellation of such security, and revive'" it for appellant's benefit, so long as "[n]o rights of third persons who might be injured by the

18

revival of the first mortgage are involved; and no prejudice to the creditor [whose security is revived], is shown." (*Simon Newman Co. v. Fink, supra*, 206 Cal. at pp. 146, 148.)

In other parts of its supplemental brief and at oral argument, appellant recognized that equitable subrogation allows it to assert respondent's rights under respondent's security, rather than to assert its own rights under its own security. Appellant argued that, if it were asserting respondent's rights under the second line of credit "to non-judicially foreclose in second priority lien position," its claim for equitable subrogation would be timely under Civil Code section 882.020 because the deed of trust has a 30-year mortgage maturity date.

Whether or not appellant has abandoned its reliance on Civil Code section 882.020 on appeal, respondent's demurrer to the equitable subrogation claim fails as a matter of law because that claim, on its face, is not subject to the three-year statute of limitations in section 338. Respondent's demurrer was based exclusively on section 338, subdivisions (a), which applies to actions based upon "a liability created by statute," and (d), which applies to actions "for relief on the ground of fraud or mistake." But respondent's right to proceed against the Limas under the deed of trust securing the second line of credit, to which appellant seeks to be subrogated, is not created by statute. (*Brandenburg v. Eureka Redevelopment Agency* (2007) 152 Cal.App.4th 1350, 1359.) Nor is respondent (or its predecessor Citibank West) the alleged victim of fraud or

19

mistake as to its own security.  Thus, respondent's right, to which appellant will be subrogated, is not in the nature of relief from a statutory violation, fraud or mistake for purposes of section 338, subdivisions (a) and (d).

In its supplemental brief, respondent incorrectly argued that appellant would be subrogated to the Limas' right to a reconveyance of Citibank West's deed of trust, or to the rights of the title insurer.  As we have explained, equitable subrogation would allow appellant to step into respondent's shoes and assert respondent's rights against the Limas under the deed of trust securing respondent's second line of credit.  (See *Simon Newman Co. v. Fink*, *supra*, 206 Cal. at p. 146.)  Since appellant seeks only a declaration of its rights, respondent's alternative argument that this is not an action to foreclose on a deed of trust is beside the point.  (See *Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan* (2007) 150 Cal.App.4th 1487, 1497 ["Declaratory relief operates prospectively to declare future rights, rather than to redress past wrongs"].)

At oral argument, for the first time, respondent asserted that appellant had not stated a valid claim for equitable subrogation because its allegations do not meet all elements of that doctrine.  Respondent cited *Caito v. United California Bank* (1978) 20 Cal.3d 694 (*Caito*), and we gave the parties an opportunity to submit additional briefing on that case.  After considering the parties' additional briefing, we find that respondent's belated arguments against the

20

merits of appellant's equitable subrogation claim are not supported by *Caito*, and they improperly raise what for the most part are factual issues that may not be resolved on demurrer. (See *Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1058 [demurrer is not appropriate vehicle for resolving disputed facts].)

In *Caito*, *supra*, 20 Cal.3d 694, two cotenant families (the Caitos and the Caponis) cosigned on a bank loan; when the bank foreclosed, the Caitos asserted priority over a subsequent lender as to amounts they claimed to have lent to the Caponis to keep the original loan current. The Caitos claimed to have signed onto that loan only to accommodate the Caponis. (*Id.* at pp. 698–700.) The court declined to apply the doctrine of equitable subrogation based on an undisclosed accommodation agreement between the two cotenant families. (*Id.* at pp. 702–703.) Although the court recited all elements of equitable subrogation, its holding turned on the principle that a codebtor could not be subrogated to the rights of a creditor since the "debt paid must be one for which the subrogee was not primarily liable." (*Id.* at pp. 704, 707.) That is not the issue here because Countrywide was not a codebtor on Citibank West's lines of credit.

Respondent's argument that Countrywide acted as a volunteer in refinancing those lines of credit finds no support in *Caito*, *supra*, 20 Cal.3d 694. Under well-established authority, a bank that refinances a loan at the debtor's request and with the understanding that it will receive

21

priority is not a volunteer.  (See *JP Morgan Chase Bank, N.A. v. Banc of America Practice Solutions, Inc.*, *supra*, 209 Cal.App.4th at p. 861; *Simon Newman Co. v. Fink*, *supra*, 206 Cal. at pp. 146–147.)

The argument that Countrywide did not pay off the Limas' entire debt raises a factual issue that is beyond the scope of our review on demurrer.  We must deem true appellant's allegations that the escrow agent conferred with both the Limas and Citibank West regarding the correct sum required to obtain a reconveyance of the 2006 deed of trust and determined that sum to be less than the amount included in the March 10, 2006 payoff statement.  We also must deem true the allegation that Citibank West accepted payment of the lesser amount and reduced the balance on the second line of credit to zero.  That the second line of credit remained open for lack of a termination letter signed by the Limas does not defeat appellant's allegations that the payment was offered and accepted in full satisfaction of the Limas' debt.  (See *Potter v. Pacific Coast Lumber Co. of Cal.* (1951) 37 Cal.2d 592, 607  [tender of lesser sum offered and accepted in full satisfaction of debt results in discharge of debt]; see also *California Federal Bank v. Matreyek* (1992) 8 Cal.App.4th 125, 134–135 [bank accepted full payment on loan without prepayment penalty].)

Respondent relies on *Caito*, *supra*, 20 Cal.3d 694 to argue that Countrywide's loan resulted from a secret agreement with the Limas, of which Citibank West had no notice, and it would be unjust to invoke the doctrine of

22

equitable subrogation against respondent. Under the "doctrine of superior equities," the right to subrogation may be invoked against a third party only if that party's wrongful conduct makes its equity inferior to the plaintiff's. (*Golden Eagle Ins. Co. v. First Nationwide Financial Corp.* (1994) 26 Cal.App.4th 160, 171; see *JP Morgan Chase Bank, N.A. v. Banc of America Practice Solutions, Inc., supra*, 209 Cal.App.4th at p. 862 [subrogee's equity superior if intervening lienor has notice of subrogee's lien].) The holding of *Caito*, which was based on the fully litigated facts of that case, cannot be used on demurrer to resolve what is essentially a factual dispute about what notice Countrywide and Citibank West each had of the other lender's refinancing of Citibank West's first line of credit.

In the first amended complaint, appellant alleged "on information and belief" that Citibank West knew Countrywide was refinancing the Limas' lines of credit with an expectation of priority. In the second amended complaint, it clarified that Citibank West must have been on notice of the refinancing because Countrywide's escrow agent was well known in the loan industry as "an escrow company that handled refinancing of loans."

A "'"[p]laintiff may allege on information and belief any matters that are not within his personal knowledge, *if he has information leading him to believe that the allegations are true*."' [Citation.]" (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1158.) On demurrer, we draw all reasonable inferences in favor of the plaintiff. (*Rickley v.*

*Goodfriend* (2013) 212 Cal.App.4th 1136, 1141–1142.)  It is not unreasonable to infer that receiving payoff requests from an escrow agent known to handle refinancing transactions would have placed Citibank West on notice that the Limas were involved in such a transaction with another lender.

Respondent argues appellant has not alleged that Countrywide relied on any wrongful act by Citibank West. However, both the first and second amended complaint allege that, in closing escrow on its loan, Countrywide relied on Citibank West's payoff statement as to the first line of credit, which was issued even though that line of credit was in the process of being refinanced by Citibank West; the first line of credit was allegedly closed and a second line of credit opened without further notice to Countrywide.  In essence, appellant has alleged that Countrywide was misled by Citibank West's partial disclosure of the payoff amount due on the first line of credit, absent additional disclosure that Citibank West was in the process of refinancing that line of credit.

In its initial brief on appeal, respondent relied on the record notice Citibank West's 2006 deed of trust gave Countrywide.  Respondent argued that the first amended complaint showed Countrywide had "actual and imputed knowledge" of Citibank West's second line of credit and deed of trust.  Respondent also argued that the allegations to the contrary in the second amended complaint were inconsistent with those in the first amended complaint and should be disregarded.  In its second supplemental brief, respondent

24

does not challenge the allegation in the second amended complaint that the escrow officer did not inform Countrywide about Citibank West's second line of credit when she learned about it in February 2006.

Constructive or record notice of an intervening lien is insufficient to defeat a claim of equitable subrogation under California law; only actual notice may defeat such a claim. (See *JP Morgan Chase Bank, N.A. v. Banc of America Practice Solutions, Inc.*, *supra*, 209 Cal.App.4th at p. 861.) The allegations in the first amended complaint show only that Countrywide acted "through its escrow agent" in paying off the second line of credit. The agency relationship gives rise to a presumptive imputation of constructive, but not actual, notice. (See *In re Marriage of Cloney* (2001) 91 Cal.App.4th 429, 438–443; see also *Han v. United States* (9th Cir. 1991) 944 F.2d 526, 529–530.)

In the second amended complaint, appellant attempted to repudiate the agency relationship with the escrow agent. That attempt may have resulted in an inconsistent, and legally conclusory, allegation, which we need not accept as true. (See *Holland v. Morse Diesel Internat., Inc.*, *supra*, 86 Cal.App.4th at p. 1447 [inconsistent allegations in subsequent pleadings may be disregarded]; *Hill v. Roll Internat. Corp.* (2011) 195 Cal.App.4th 1295, 1300 [contentions, deductions, and conclusions of law need not be accepted as true].) The allegation also defies logic because appellant's equitable subrogation claim is premised on the

escrow agent's payoff of the second line of credit on behalf of Countrywide.

Whether or not the escrow agent exceeded its authority in negotiating the payoff of the second line of credit, nothing in the first or second amended complaint shows that Countrywide had actual knowledge of that line of credit at any time before funding its own line of credit at the close of escrow. (See, e.g., *Lawyers Title Ins. Corp. v. Feldsher* (1996) 42 Cal.App.4th 41, 54 [examining subrogee's knowledge and conduct at close of escrow].) Nor does the allegation in the first amended complaint that Countrywide paid off the second line of credit through its escrow agent necessarily show that the escrow agent was in communication with Countrywide after the close of escrow. Rather, the allegations in the first and second amended complaints consistently show that the additional funds used for the payoff of Citibank West's second line of credit came from loan proceeds already disbursed to the Limas.

In sum, we disagree with respondent's contentions that appellant has either abandoned its claim for declaratory relief based on equitable subrogation, or failed to state such a claim on the factual allegations of the second amended complaint. Nor do we agree that the claim is barred by the statute of limitations in section 338.[2]

---

[2] Whether the equities would ultimately favor appellant and the extent of any priority it may be awarded on the facts of this case are not issues properly before us, and we express no view about them.

## C. Equitable Subordination

Although appellant purported to assert a claim for declaratory relief based on equitable subordination, it does not address the elements of that theory on appeal, and the factual allegations in the two amended complaints do not state a claim under such a theory.[3]

*Parker v. Tout* (1929) 207 Cal. 590, the only authority cited in support of the theory of equitable subordination in the first amended complaint, is a case of "replacement and modification" of a senior mortgage by the same lender. (See Rest.3d Property, Mortgages, *supra*, § 7.3 [where lender releases and replaces senior mortgage with new mortgage, it retains priority except to extent material change in terms prejudices junior lienholder].) In *Parker*, a bank had retired its own loan in order to lend an increased amount, unaware that a mechanic's lien had been recorded in the meantime. (*Id.* at p. 594.) The court held that "the lien of the bank under its trust deed is superior in right to the mechanic's

---

[3] The doctrine of equitable subordination has been codified in the Bankruptcy Code. (See 11 U.S.C. § 510(c).) Appellant cites no authority for applying it outside the bankruptcy context. (See, e.g., *HBE Leasing Corp. v. Frank* (2d Cir. 1995) 48 F.3d 623, 634 ["Equitable subordination is distinctly a power of federal bankruptcy courts, as courts of equity, to subordinate the claims of one creditor to those of others"].)

lien to the extent of the amount of the original note and interest thereon." (*Ibid.*)

Subsequent cases have made clear that a material modification of a senior lien, such as an increase in the principal or interest rate, does not result in loss of priority absent contractual subordination. (See *Friery v. Sutter Buttes Sav. Bank* (1998) 61Cal.App.4th 869, 877–879.) Where a seller agrees to subordinate to construction loans, a material modification of those loans may result in their total loss of priority. (*Gluskin v. Atlantic Savings & Loan Assn.* (1973) 32 Cal. App. 3d 307, 315.) However, in the case of a subordinating junior lender, only the modification of the senior lien loses priority. (*Lennar Northeast Partners v. Buice* (1996) 49 Cal. App. 4th 1576, 1586–1587.)

These cases are based on the premise that the junior lienholder has agreed to be in junior position and should be protected from modifications in the senior lien to the extent that those modifications materially increase the risk of default. (See generally Comment, *Subrogation of Mortgages in California: A Comparison with the Restatement and Proposals for Change* (2001) 48 UCLA L. Rev. 1633, 1646–1651.) Assuming Citibank West's refinancing of its first line of credit with a second line of credit with a higher limit resulted in replacement and modification, appellant alleges that Countrywide never agreed to be in a junior position to Citibank West's senior lien; rather, it bargained for retiring that lien completely and taking its priority position. These allegations do not fit the doctrine of replacement and

modification; rather, as we have explained, they state a claim under the doctrine of equitable subrogation.[4]

## II

In the second amended complaint, appellant asserted causes of action for unjust enrichment, seeking restitution of the $599,567.65 payoff amount, and for an injunction based on a theory of constructive fraud, seeking to forestall foreclosure on the property until respondent subordinates its lien on the property to appellant's. In its reply brief on appeal, appellant maintains that all of its claims are premised on respondent's assertion of an apparently superior lien to the property, to which appellant seeks to subrogate (or which it seeks to subordinate to its own lien).

As we have explained, we are not bound by the form of appellant's claims or the relief demanded. (*Yee v. Cheung,*

---

[4] Even were appellant a bona fide subordinating junior lienhoder, California replacement and modification cases do not appear to entitle it, as a hard money lender, to priority over respondent's entire lien, but only over the $100,000 limit increase between Citibank West's first and second lines of credit. (See *Lennar Northeast Partners v. Buice, supra,* 49 Cal. App. 4th at p. 1588; Comment, *supra,* 48 UCLA L. Rev. at pp. 1647–1648.) In contrast, depending on the equities of the case, the doctrine of equitable subrogation may allow appellant to step into respondent's shoes and assert respondent's rights under the deed of trust securing the second line of credit, at least as to the payoff amount. (See *Simon Newman Co. v. Fink, supra,* 206 Cal. at p. 146; Comment, at p. 1655.)

*supra*, 220 Cal.App.4th at p. 194.) We see no basis for distinguishing the causes of action asserted in the second amended complaint from the claim for declaratory relief based on equitable subrogation in the first amended complaint. In their essence, the claims of unjust enrichment and constructive fraud are premised on Countrywide's refinancing of Citibank West's line of credit with the expectation of lien priority, which did not materialize.

"Unjust enrichment is not a cause of action, . . . or even a remedy, but rather ""a general principle, underlying various legal doctrines and remedies."" . . . . [Citation.] It is synonymous with restitution. [Citation.]' [Citation.]" (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 387.) Equitable subrogation may be used "'to enforce restitution in order to prevent unjust enrichment. . . . [Citation.]'" (*Estate of Kemmerer* (1952) 114 Cal.App.2d 810, 814; see also *Lawyers Title Ins. Corp. v. Feldsher*, *supra*, 42 Cal.App.4th at p. 53.)

Citibank West's alleged nondisclosure of its own refinancing of the first line of credit and the circumstances surrounding its failure to close the second line of credit are issues relevant to the equities of the case. It is doubtful, however, that they state a separate cause of action for constructive fraud because constructive fraud is "'a unique species of fraud applicable only to a fiduciary or confidential relationship.' [Citation.]" (*Mark Tanner Construction, Inc. v. HUB Internat. Insurance Services, Inc.* (2014) 224 Cal.App.4th 574, 588.) No such relationship has been

30

alleged in this case, nor does it generally arise in arm's length dealings between business entities.   (See, e.g., *City of Hope Nattional Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 386–392; *Recorded Picture Co. v. Nelson Entertainment, Inc.* (1997) 53 Cal.App.4th 350, 370; *Worldvision Enterprises, Inc. v. American Broadcasting Cos.* (1983) 142 Cal.App.3d 589, 595.)

Besides, were the allegations against Citibank West to give rise to a separate claim of constructive fraud (or negligent misrepresentation), such a claim would be barred by the statute of limitations in section 338, subdivision (d). (*Thomson v. Canyon* (2011) 198 Cal.App.4th 594, 607 [applying three-year statute of limitations to claim of constructive fraud]; *Broberg v. The Guardian Life Ins. Co. of America* (2009) 171 Cal.App.4th 912, 920 [applying three-year statute of limitations to claims of fraud and negligent misrepresentation]; but see *Ventura County Nat. Bank v. Macker* (1996) 49 Cal.App.4th 1528, 1530–1531 [applying two-year statute of limitations to claim of negligent misrepresentation].)

Appellant's argument that a claim subject to the statute of limitations in section 338 would not have accrued until 2011, when respondent asserted its priority, is based on the assumption that Citibank West's lien terminated upon payoff; hence, according to appellant, respondent did not have priority as a matter of law, and it injured appellant's interest only by its misguided claim of priority. As we have explained, that assumption is incorrect.

31

Respondent has legal priority under the "first in time, first in right" system of lien priorities unless equity requires a different result. (*JP Morgan Chase Bank, N.A. v. Banc of America Practice Solutions, Inc.*, *supra,* 209 Cal.App.4th at p. 860.)

Nor does the delayed discovery rule aid appellant with any claim for fraud subject to section 338. Delayed discovery, unlike equitable subrogation, is defeated by presumed or constructive notice. (*Nguyen v. Western Digital Corp.* (2014) 229 Cal.App.4th 1522, 1551; see generally 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 659, p. 870.) Appellant relies on *Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, to argue that Countrywide had no duty to inspect the public records for a reconveyance of Citibank West's deed of trust because it had no reason to suspect Citibank West retained lien priority. The court in *Dintino* reasoned that a claim based on the mistaken recordation of a reconveyance by a bank may not be defeated solely by the record of reconveyance, where the bank has no other reason to suspect its mistake. (*Id.* at p. 352.)

In contrast, here, appellant's allegations show that, in March 2006, Countrywide's escrow agent learned several things that would have placed Countrywide on inquiry notice as to its lien priority: that the Limas had simultaneously refinanced the same line of credit with two banks, that Countrywide's payoff of the first line of credit had been rejected, and that Citibank West conditioned the closing of the second line of credit on receiving a signed termination

letter with the payoff. Because the escrow agent's knowledge of these facts is imputed to Countrywide for purposes of accrual of any independent claim for fraud against Citibank West, such a claim would be barred under section 338, subdivision (d).

We conclude that appellant may proceed on its cause of action for declaratory relief based on equitable subrogation. We consider all other theories in the first and second amended complaint to be variations of that cause of action, rather than independent causes of action, as they assert no independent right for which relief may be granted under California law. (*Davies v. Krasna*, *supra*, 14 Cal.3d at p. 515.) While on the facts of this case the statute of limitations in section 338 would bar a cause of action subject to its terms, the claim for equitable subrogation is not subject to section 338 and is not time-barred.

## DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings on appellant's request for declaratory relief based on equitable subrogation.  The parties are to bear their own costs on appeal.

CERTIFIED FOR PUBLICATION

EPSTEIN, P. J.

We concur:


WILLHITE, J.


COLLINS, J.