[No. G045943. Fourth Dist., Div. Three. Sept. 27, 2012.]

JP MORGAN CHASE BANK, N.A., Cross-complainant and Respondent, v. BANC OF AMERICA PRACTICE SOLUTIONS, INC., Cross-defendant and Appellant.

856

## Counsel

Law Offices of Marlene Leiva, Marlene Leiva; Carroll, Burdick & McDonough, Vicki L. Freimann and Nathaniel K. Fisher for Cross-defendant and Appellant.

Law Offices of Mary Jean Pedneau, Mary Jean Pedneau, William R. Larr and Susan S. Vignale for Cross-complainant and Respondent.

## Opinion

**MOORE, J.**—This case involves the application of equitable subrogation. JP Morgan Chase Bank, N.A. (Chase), made a loan to Jon and Julie Siems to pay off their first and second deeds of trust on their residence. Chase intended its loan to be secured by a new first deed of trust. Indeed, its escrow instructions specifically forbade disbursement of the funds if its deed of trust would not be in the primary position.

Unbeknownst to Chase, Jon Siems also sought a business loan from Sky Bank, Banc of America Practice Solutions, Inc.'s (Banc) predecessor in interest, about the same time.[1] While that loan was primarily secured by the personal property assets of Jon Siems's medical practice, it was also to be secured by a deed of trust on the Siemses' real property, as the Siemses guaranteed the business loan. Banc, knowing the real property was already secured by first and second deeds of trust that were in place before the Siemses applied for the Chase loan and the medical corporation applied for the Banc loan, anticipated its loan would be secured by a third deed of trust on the property.

---

[1] In discussing this loan we refer to Banc rather than Sky Bank, as Banc succeeded Sky Bank's interest.

When the Chase and Banc loans were funded, Banc obtained and filed a deed of trust before Chase. Chase sought and obtained an order in the superior court placing its deed of trust in a position of primacy over Banc's under equitable subrogation. Banc appealed. We affirm. This is an appropriate case for invocation of equitable subrogation. Chase sought to pay off the first and second deeds of trust and substitute its deed of trust in a position of primacy. Banc sought to secure its loan with a deed of trust subordinate to the two other deeds subsequently paid off by Chase. Application of equitable subrogation in this matter does not prejudice Banc. In fact, equitable subrogation provides both parties with exactly what each anticipated in making their respective loans.

## I

## FACTS

The facts underlying this matter are undisputed. Jon Siems and Julie Siems owned the residence at 116 Kings Place in Newport Beach (the property), subject to first and second deeds of trust. The first deed of trust secured a loan of more than $2 million from Chevy Chase Bank (Chevy Chase) and the second deed of trust secured a loan of more than $1 million from Bay Area Financial Corporation (Bay Area).

In 2006, the Siemses sought to refinance and pay off the two deeds of trust on the property, replacing them with a new first deed of trust. For that purpose, Chase loaned the Siemses over $3.2 million and the escrow company, First American Title Company's subescrow department, disbursed the loan proceeds, paying off the holders of the first and second deeds of trust, Chevy Chase and Bay Area, respectively, on October 25, 2006. Chase filed its deed of trust that same day.

Funding of the Chase loan was made after First American Title Company issued a preliminary title report showing the Chevy Chase and Bay Area deeds of trust. The preliminary title report stated it was accurate as of August 16, 2006, at 7:30 a.m. Chase's instructions to the escrow company expressly stated the loan was to pay off the existing first and second deeds of trust, the loan was not to close unless secured by a new first deed of trust, and any second mortgage on the property must be subordinate to Chase's deed of trust and approved by Chase prior to closing.

Apparently unbeknownst to Chase, Jon Siems also sought another loan during 2006, this one for over $2 million. The loan was to be used to finance his medical practice. The application for the loan was made by the "Jon L. Siems, M.D., Professional Corporation," with the Siemses guaranteeing the loan. As collateral, the professional corporation pledged the personal property of the medical practice. The Siemses guaranteed the loan and gave Banc a deed of trust on the property. Banc was aware the property was encumbered by the Chevy Chase and Bay Area deeds of trust. Banc's loan closed in August 2006, and the deed of trust securing the loan was filed on August 24, 2006, eight days after the date referred to in Chase's preliminary title report.

When Chase made its loan to the Siemses, it had no actual knowledge of Banc's deed of trust. Neither the preliminary title report nor the title insurance issued to Chase contained any references to Banc's deed of trust.

Jon Siems's professional corporation defaulted on Banc's loan on December 20, 2009, with $2.3 million owing. Banc instituted judicial foreclosure proceedings the following March. Chase subsequently filed a cross-complaint seeking an equitable lien on the property and declaratory relief.

The superior court granted Chase's motion for summary adjudication, and entered judgment in favor of Chase, establishing two equitable liens in favor of Chase. The first was in the principal amount of $2,197,233.63 plus interest, the amount paid off on the Chevy Chase first deed of trust. The second was in the amount of $1,003,042.52 plus interest, the amount paid off on the Bay Area second deed of trust.

## II

## DISCUSSION

A court must grant a party's motion for summary judgment or summary adjudication when the papers submitted demonstrate there is no triable issue as to any material fact and the moving party is entitled to the judgment or adjudication as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].) We review de novo an order granting summary judgment where there are no disputed facts. (*Beckett v. MasterCraft Boat Co.* (2005) 126 Cal.App.4th 1045, 1048 [24 Cal.Rptr.3d 490].) The facts in this matter are not in dispute.

The Siemses refinanced the loan on their property. As a result, Chase paid off the then existing first and second deeds of trust on the property to Chevy Chase and Bay Area, respectively. In making the loan, Chase anticipated it would receive a first deed of trust on the property to assure payment on its

loan. In fact, the escrow instructions forbade disbursement of the loan proceeds if it were determined there was an intervening deed of trust and Chase's deed of trust would not be in the primary position. Escrow closed and the loan proceeds paid off the loans secured by the first and second deeds of trust. Unbeknownst to Chase, Jon Siems was in the process of obtaining a loan from Banc at the time he was arranging a loan from Chase.

Neither is there any reason to believe Banc knew Jon Siems was seeking a loan from Chase. However, before Banc made its loan and accepted a deed of trust as secondary collateral to secure its loan, Banc learned of the preexisting deeds of trust in favor of Chevy Chase and Bay Area. In other words, Banc anticipated its deed of trust would be in a junior position to the deeds of trust to Chevy Chase and Bay Area which, at the time of its filing, it was. The loan from Banc closed first and a deed of trust in favor of Banc was filed prior to the closing of the loan from Chase and the filing of Chase's deed of trust.

■ Banc is correct in its assertion that "California follows the 'first in time, first in right' system of lien priorities. ([Civ. Code,] § 2897.)" (*Thaler v. Household Finance Corp.* (2000) 80 Cal.App.4th 1093, 1099 [95 Cal.Rptr.2d 779].) However, that rule is not without exceptions. "*Other things being equal*, different liens upon the same property have priority according to the time of their creation . . . ." (Civ. Code, § 2897, italics added.) It appears the Legislature used the words "other things being equal" to refer to the equities involved in a competing liens situation. The doctrine of equitable subrogation is an exception to the first in time, first in right rule and applies in those situations where equity requires a different result. (*Simon Newman Co. v. Fink* (1928) 206 Cal. 143, 147 [273 P. 565] [equitable subrogation applied though party did not search records].)

The Supreme Court stated the general rule applicable to a lender's entitlement to equitable subrogation almost 84 years ago: " 'One who advances money to pay off an encumbrance on realty at the instance of either the owner of the property or the holder of the incumbrance, either on the express understanding, or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, is not a mere volunteer; and in the event the new security is for any reason not a first lien on the property, the holder of such security, if not chargeable with culpable and inexcusable neglect, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equities of others would be prejudiced thereby, and to this end equity will set aside a cancellation of such security, and revive the same for his benefit.' [Citations.]" (*Simon Newman Co. v. Fink, supra*, 206 Cal. at p. 146; see *Katsivalis v. Serrano Reconveyance Co.* (1977) 70 Cal.App.3d 200, 210 [138 Cal.Rptr. 620].) In doing so, equity gives effect to the intentions of the parties. (*Katsivalis*, at p. 211.)

■ " '[C]ourts look with favor upon equitable liens, and frequently such liens are employed to do justice and equity and to prevent unfair results. [Citations.]' [Citations.]" (*Katsivalis v. Serrano Reconveyance Co., supra*, 70 Cal.App.3d at p. 211.) Consequently, equity will generally "give a lender the security for which he bargained in the situation when there is mistake or fraud with respect to an intervening right which cuts off a preexisting encumbrance which has been satisfied by the loan proceeds." (*Id.* at p. 213.) Chase paid off the Siemses' first and second deeds of trust on their property at their request, was to receive a first deed of trust in return, and is entitled to equitable subrogation *unless* Chase is chargeable with culpable and inexcusable neglect, or superior or equal equities on Banc's part would be prejudiced by granting Chase equitable subrogation. (*Simon Newman Co. v. Fink, supra*, 206 Cal. at p. 146.)

Chase retained a title insurance company to research the title on the Siemses' property. The preliminary report upon which Chase apparently relied in making the loan to the Siemses was prepared before Banc filed its deed of trust on the property. The problem here was the preliminary report was made more than two months before Chase's loan closed. Still, it is undisputed that Chase did not have actual knowledge of Banc's intervening deed of trust.

■ Banc claims the recording of its deed put Chase on constructive notice, and argues Chase's reliance on the preliminary report was unreasonable and precludes Chase from invoking equitable subrogation. However, constructive notice, as opposed to actual notice, does not forestall application of equitable subrogation. (*Smith v. State Savings & Loan Assn.* (1985) 175 Cal.App.3d 1092, 1098 [223 Cal.Rptr. 298].) And given the failure to search the records does not itself preclude equitable subrogation (*Simon Newman Co. v. Fink, supra*, 206 Cal. at p. 147; see *Lawyers Title Ins. Corp. v. Feldsher* (1996) 42 Cal.App.4th 41, 49 [49 Cal.Rptr.2d 542] [failure to find recorded lien did not preclude awarding an equitable lien]), neither should reliance on a preliminary title report. By the same token, if the failure to make a records search does not reduce the lender's equity, neither should the lender's reliance on a preliminary report that failed to reveal an intervening deed of trust. As Chase did not have *actual* knowledge of Banc's deed of trust, did not breach any duty owed to Banc, and has not been shown to have engaged in any misleading conduct, Chase is not chargeable with culpable and inexcusable neglect. (*Smith v. State Savings & Loan Assn., supra*, 175 Cal.App.3d at p. 1098.)

That brings us to the question of whether Banc's equities are equal to or greater than Chase's. If they are, Chase is not entitled to equitable subrogation. (*Simon Newman Co. v. Fink, supra*, 206 Cal. at p. 146.) As stated above, Chase paid off the existing first and second deeds of trust in favor of Chevy Chase and Bay Area, respectively, and expected a first deed of trust in return. The loan would not have been otherwise made. The escrow company was instructed to not disburse the loan funds if it were determined Chase's deed of trust would not be in a position of primacy. Chase did not know of the loan from Banc or that Banc had filed its deed of trust prior to Chase filing its deed of trust. Banc, on the other hand, knew of the deeds of trust held by Chevy Chase and Bay Area. It anticipated and received a third deed of trust on the property in exchange for the loan to the professional corporation. In such a situation, the equities favor Chase.

Equitable subrogation looks to the intentions of the parties (*Katsivalis v. Serrano Reconveyance Co., supra*, 70 Cal.App.3d at p. 211) and its application in this matter gives both Chase and Banc exactly what each intended: Chase receives priority in the amounts used to pay off the preexisting first and second deeds of trust, and Banc's deed of trust is in the same position it bargained for. That the borrowers defaulted on the loans and the market took a downturn prior to the default are not facts affecting the respective equities of Banc and Chase. Rather, these are risks Banc knowingly assumed in making its loan and taking back a junior deed of trust.

Neither does the fact that Chase may have a cause of action against its title insurance company affect the equities of the respective parties. First, there is no guarantee of success in such a lawsuit. Second, if Chase receives the equitable subrogation to which it is entitled under the facts of this case, there is no loss for the title company to indemnify. Third, there is the question of whether, if sued by Chase, the title insurance company would be entitled to assert Chase's right to equitable subrogation.

■ Banc characterizes the use of equitable subrogation in this matter as punishment imposed on it, or an action taken to its prejudice. But that is not an accurate assessment. Equitable subrogation provides Banc just what it bargained for and received from the Siemses: a deed of trust third in priority. Banc is in the same position it would have been in had the Siemses not paid off their preexisting first and second deeds of trust by refinancing with Chase. Getting exactly what one bargained for is neither punishment nor prejudicial. Accordingly, we conclude the trial court did not err in granting Chase equitable subrogation in this matter.

## III

## DISPOSITION

The judgment is affirmed. Chase is entitled to its costs on appeal.

O'Leary, P. J., and Thompson, J., concurred.