Filed 4/21/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NAUTILUS, INC.,<br><br>    Plaintiff, Cross-defendant and Appellant,<br><br>        v.<br><br>CHAO CHEN YANG et al.,<br><br>    Defendants, Cross-defendants and Respondents;<br><br>URBAN FINANCIAL GROUP, INC.,<br><br>    Defendant, Cross-complainant and Appellant. | G051956<br><br>(Super. Ct. No. 30-2012-00613352)<br><br>O P I N I O N |

Appeals from a judgment of the Superior Court of Orange County, Kirk H. Nakamura, Judge.  Affirmed.

Thompson Coburn and Samuel R. Watkins for Plaintiff, Cross-defendant, and Appellant.

Anderson, McPharlin & Conners, Michael S. Robinson; Songstad Randall Coffee & Humphrey, L. Allan Songstad, Jr., and William D. Coffee for Defendant, Cross-complainant and Appellant.

No appearance for Defendants, Cross-defendants and Respondents.

\*　　\*　　\*

INTRODUCTION

Nautilus, Inc. (Nautilus), obtained a judgment against Stanley Kuo Hua Yang, and recorded an abstract of judgment against real property on which Stanley and his brother, Peter Chun Hua Yang, held title.[1]  Stanley and Peter transferred title on the property to their father, Chao Chen Yang, who obtained a reverse mortgage loan on the property from Security One Lending (Security One).  In its title search, the title insurance company missed Nautilus's abstract of judgment when the reverse mortgage loan funded.

Stanley's transfer of the property to Chao Chen was a fraudulent conveyance under the Uniform Fraudulent Transfer Act (UFTA) (Civ. Code, § 3439 et seq.).[2]  (All further statutory references are to the Civil Code, unless otherwise specified.)  Nautilus sued Stanley, Peter, and Chao Chen.  Nautilus also sued Urban Financial Group, Inc. (Urban Financial), which bought the mortgage from Security One, for damages resulting from the fraudulent conveyance from Stanley to Chao Chen.  Following a bench trial, the court found that Security One and Urban Financial had acted in good faith, and could not be liable to Nautilus.

We affirm.  As we will explain, the trial court misapplied the burden of proof in connection with the good faith defense.  Nevertheless, given the facts of the case,

---

[1]  We will refer to the members of the Yang family by their first names to avoid confusion; we intend no disrespect.

[2]  Since the judgment was entered in this case, the UFTA has been renamed the Uniform Voidable Transactions Act.  (2015 Stats., ch. 44, § 2.)  For purposes of consistency and readability, in this opinion, we will continue to refer to the relevant statutes as the UFTA.

2

even under the correct burden of proof and legal principles, the good faith defense was established.

We publish our opinion because of our analysis of the requirements of the good faith defense. Some cases have held that a transferee cannot avail itself of the good faith defense if the transferee had fraudulent intent, colluded with a person who was engaged in a fraudulent conveyance, or actively participated in a fraudulent conveyance. A line of federal cases interpreting California law concludes the good faith defense may also fail if the transferee had actual knowledge of facts suggesting to a reasonable person that the transfer was fraudulent. Some of those cases may be read to improperly establish an inquiry notice standard, and others frame the test in a way that is inconsistent with the legislative comment to section 3439.08. After analyzing those state and federal cases, we hold a transferee cannot benefit from the good faith defense if that transferee had fraudulent intent, colluded with a person who was engaged in the fraudulent conveyance, actively participated in the fraudulent conveyance, or had *actual knowledge of facts showing knowledge of the transferor's fraudulent intent*.

We also conclude that the trial court did not err in granting equitable subrogation to Urban Financial. This decision has the effect of making a portion of the Urban Financial mortgage senior to Nautilus's abstract of judgment even though the Urban Financial mortgage was recorded after the abstract of judgment.

Finally, we conclude the trial court's equitable grant of priority to a money judgment to Nautilus as against Chao Chen, over a portion of Urban Financial's lien on the reverse mortgage loan taken out by Chao Chen, was proper.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Nautilus is a manufacturer of exercise equipment under various trade names including Bowflex. In December 2011, Nautilus obtained an $8 million default judgment against Stanley (among others not involved in the present case) arising from

3

counterfeiting Nautilus products. On April 4, 2012, Nautilus recorded an abstract of judgment in Orange County, California.

As of the beginning of 2012, Stanley and Peter held title as joint tenants to a single-family residence in Fountain Valley, California (the Property). In February and April 2012, through two separate transactions, Stanley and Peter conveyed their interests in the Property to Chao Chen. Chao Chen then obtained a reverse mortgage loan on the Property on April 17, 2012, in the amount of $386,835 from Security One;[3] a deed of trust was recorded to secure the reverse mortgage loan.

First American Title Company (First American) ran a title search in connection with the reverse mortgage loan, which revealed Nautilus's abstract of judgment. First American acknowledged its error in failing to realize the abstract of judgment affected the Property.

The proceeds of the reverse mortgage loan were used to pay off the existing liens against the Property, all of which had been recorded before Nautilus's abstract of judgment, in the total amount of $308,576.72. Those prior liens consisted of mortgage liens in favor of CitiMortgage, Inc., and Bank of the West, and a judgment lien in the amount of $20,514.88 against Stanley in favor of Nautilus Design & Construction (Nautilus Design). (The judgment in favor of Nautilus Design is different from the judgment in favor of Nautilus.) The remaining funds were disbursed to Chao Chen. Security One sold the reverse mortgage loan to Urban Financial in May 2012 for $422,302.21.

Nautilus filed a complaint against Urban Financial, Stanley, Peter, and Chao Chen, to set aside fraudulent transfers, recover damages from Stanley, Peter, and

_____

[3] Reverse mortgages are federally insured loans designed to assist senior citizens in which the borrower remains on title, lives in the property, is free of monthly payments, and may use the loan to pay off exiting debts against the property.

4

Chao Chen for conspiracy, and for declaratory relief against Urban Financial.[4]  Urban Financial filed a cross-complaint against Nautilus, Stanley, Peter, and Chao Chen, seeking to quiet title, to establish and foreclose an equitable lien, to recover damages from Stanley, Peter, and Chao Chen for fraud, and for declaratory relief.

The case proceeded to a court trial.  The trial court signed a statement of decision and a judgment, which provided, in relevant part:

1.  Security One and Urban Financial were good faith lenders for value, and Nautilus therefore could not recover damages from Urban Financial.

2.  Stanley and Chao Chen were each awarded a one-half, undivided interest in the Property, subject to the other parties' lien rights.

3.  Urban Financial was granted a first priority equitable lien on the Property in the amount of $308,576.72.

4.  Nautilus was granted a second priority judgment lien on Stanley's one-half interest in the Property, based on its abstract of judgment, in the amount of $8 million.

5.  Nautilus was awarded a money judgment against Chao Chen in the amount of $153,212, secured by a lien on Chao Chen's one-half interest in the Property.

6.  Urban Financial's deed of trust securing the reverse mortgage loan was deemed to be junior to Urban Financial's equitable lien, Nautilus's judgment lien, and Nautilus's money judgment.

Urban Financial's motion to vacate the judgment was denied.  Nautilus filed a notice of appeal, and Urban Financial filed a notice of cross-appeal.

---

[4]  Security One and the United States Department of Housing and Urban Development (HUD) were initially named in Nautilus's complaint, but were later dismissed.

5

I.

*THE TRIAL COURT DID NOT ERR IN FINDING THAT SECURITY ONE
AND URBAN FINANCIAL ACTED IN GOOD FAITH.*

A. *General Principles*

A fraudulent conveyance is "a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." (*Yaesu Electronics Corp. v. Tamura* (1994) 28 Cal.App.4th 8, 13.) The UFTA makes fraudulent transfers voidable: "(a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows: [¶] (1) With actual intent to hinder, delay, or defraud any creditor of the debtor. [¶] (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either: [¶] (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction. [¶] (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." (§ 3439.04, subd. (a).)

If a transferee or obligee took in good faith and for a reasonably equivalent value, however, the transfer or obligation is not voidable. (§ 3439.08, subd. (a).)[5] Whether a transfer is made with fraudulent intent and whether a transferee acted in good faith and gave reasonably equivalent value within the meaning of section 3439.08, subdivision (a), are questions of fact. (*Annod Corp. v. Hamilton & Samuels* (2002) 100

---

[5] "A transfer or obligation is not voidable under paragraph (1) of subdivision (a) of Section 3439.04, against a person that took in good faith and for a reasonably equivalent value given the debtor or against any subsequent transferee or obligee." (§ 3439.08, subd. (a).)

Cal.App.4th 1286, 1294 (*Annod*).) "When the trial court has resolved a disputed factual issue, the appellate courts review the ruling according to the substantial evidence rule. If the trial court's resolution of the factual issue is supported by substantial evidence, it must be affirmed." (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.) As the party seeking to invoke the protection of section 3439.08, subdivision (a), Urban Financial had the burden of proving that subdivision's applicability by a preponderance of the evidence. (§ 3439.08, subds. (f)(1), (g).)[6]

### B. *The Trial Court's Statement of Decision*

In the statement of decision, the trial court made the following findings regarding the issue of good faith on the part of Security One and Urban Financial: "The Court finds both Security One Lending and Urban Financial acted in good faith in making and purchasing the Subject Loan, respectively, such that Urban Financial has a complete defense to Nautilus's claim under the UFTA. . . . It is undisputed that Urban Financial paid $422,302.21 for the Subject Loan and the Urban Deed of Trust. Pursuant to the two controlling California cases of *Lewis v. Superior Court* (2nd Dist. 1994) 30 Cal.App.4th 1850, 1858-1859 . . . , and *Annod Corp. v. Hamilton & Samuels* (4th Dist., Div. 3 2002) 100 Cal.App.4th 1286, 1299-1300 . . . , in order to defeat a good faith obligee defense under the UFTA, a party must show that the lender either (1) colluded with the debtor, or (2) actively participated in the debtor's fraudulent scheme. [Citation.]

_____

[6] Section 3439.08 provides: "(f) The following rules determine the burden of proving matters referred to in this section: [¶] (1) A party that seeks to invoke subdivision (a), (d), or (e) has the burden of proving the applicability of that subdivision. [¶] (2) Except as otherwise provided in paragraph (3) or (4), the creditor has the burden of proving each applicable element of subdivision (b) or (c). [¶] (3) The transferee has the burden of proving the applicability to the transferee of subparagraph (B) of paragraph (1) of subdivision (b). [¶] (4) A party that seeks adjustment under subdivision (c) has the burden of proving the adjustment. [¶] (g) The standard of proof required to establish matters referred to in this section is preponderance of the evidence." (§ 3439.08, subds. (f), (g).)

As the evidence presented at trial was that neither lender had actual knowledge of Nautilus, Nautilus's judgment against Stanley Yang, or Nautilus's Abstract, Nautilus did not meet its burden in establishing that either lender colluded with . . . Stanley Yang or actively participated in the debtor's fraudulent scheme. [¶] The Court rejects Nautilus's argument that Urban Financial *should have* discovered Stanley Yang's fraud upon Nautilus based on federal bankruptcy authorities. Even Nautilus's cited case of *Cybermedia, Inc. v. Symantec Corp.* (N.D. Cal. 1998) 19 F.Supp.2d 1070 . . . rejects the argument that there is an inquiry notice standard [citation], and acknowledges that the *Lewis* opinion sets forth California's rule on good faith [citation]. In any event, even had this standard been applied, Nautilus failed to carry its burden of proving indicia of fraud on the transaction sufficient to put a reasonable lender on notice that a fraud was occurring." (Fn. omitted.)

### C. *Burden of Proof; Good Faith Defense*

As conceded on appeal by Urban Financial, the trial court erred in placing the burden of proof on Nautilus to prove the good faith defense did not apply. (§ 3439.08, subd. (f).) In reviewing the evidence, *post*, we bear in mind that the burden of proof was on Urban Financial to prove the good faith defense applied.

Urban Financial concedes on appeal that there was a fraudulent transfer. Similarly, Nautilus concedes that Urban Financial took for a reasonably equivalent value. Therefore, we will not discuss those issues further. Accordingly, we next analyze the standard for deciding whether Security One or Urban Financial "took in good faith" (§ 3439.08, subd. (a)) within the meaning of the statute.

Comment (1) of the Legislative Committee comments to section 3439.08, subdivision (a), provides, in relevant part: "'[G]ood faith' means that the transferee acted without actual fraudulent intent and that he or she did not collude with the debtor or otherwise actively participate in the fraudulent scheme of the debtor. The *transferee's*

8

*knowledge of the transferor's fraudulent intent* may, in combination with other facts, be relevant on the issue of the transferee's good faith of the transferor [*sic*] or of the transferor's insolvency." (Legis. Com. com.—Assembly (Revised) 1986 Addition, 12A pt. 2 West's Ann. Civ. Code (2016 ed.) foll. § 3439.08, p. 377, italics added.)[7]

The parties agree there was no evidence that Security One or Urban Financial had actual fraudulent intent, actually colluded with Stanley to defraud Nautilus, or actively participated in the fraudulent scheme. As we will explain, based on the Legislative Committee's comment to section 3439.08 (Legis. Com. com.—Assembly (Revised) 1986 Addition, 12A pt. 2 West's Ann. Civ. Code, *supra*, foll. § 3439.08, p. 377), the issue in this appeal is whether there is evidence showing Security One or Urban Financial had *actual knowledge that the transferor had fraudulent intent*.

Urban Financial relies on two California appellate court opinions—*Lewis v. Superior Court* (1994) 30 Cal.App.4th 1850 (*Lewis*) and *Annod*, *supra*, 100 Cal.App.4th 1286—to support its argument that the good faith defense protects it in this case because there is no evidence of deliberate wrongful conduct on its part. These cases do not fully set forth the appropriate standard for establishing the good faith defense, and neither *Lewis* nor *Annod* addressed a record in which there was an issue whether the transferee had actual knowledge of the fraudulent intent of the transferor.

In *Lewis*, *supra*, 30 Cal.App.4th at page 1855, Robert F. Lewis and Josephine N. Lewis (the Lewises) acquired title to a property in Palos Verdes from Randolph Shipley for a price close to the appraised value. The Lewises obtained two title insurance policies, neither of which revealed any claims against title. (*Id.* at p. 1856.)

---

[7] "The conflict in the cases should be resolved in favor of the legislative committee comment and the policy articulated by the commission." (*Morris v. County of Marin* (1977) 18 Cal.3d 901, 927 (conc. opn. of Clark, J.).) Comments by legislative committees are among the resources we use to ascertain legislative intent. (*Schooler v. State of California* (2000) 85 Cal.App.4th 1004, 1012; *Arroyo v. State of California* (1995) 34 Cal.App.4th 755, 761.)

The Lewises recorded a grant deed placing title to the property in their names on February 28. (*Ibid.*) However, a lis pendens had been recorded against the property on February 24, although it was not indexed until February 29. (*Ibid.*) The lis pendens arose out of a federal lawsuit alleging Shipley purchased the property with misappropriated funds. (*Id.* at p. 1857.)

One of Shipley's creditors sued the Lewises for fraudulent conveyance. (*Lewis*, *supra*, 30 Cal.App.4th at p. 1858.) The Lewises filed a motion for summary judgment, arguing they had a complete defense to the claim based on section 3439.08, subdivision (a). (*Lewis*, *supra*, at p. 1858.) Although the trial court concluded that the Lewises had no actual knowledge of the lis pendens or of Shipley's alleged misdeeds, the existence of "the federal lis pendens deprived the Lewises of their status as good faith purchasers through constructive notice." (*Ibid.*)

The appellate court issued a writ of mandate, rejecting the "fiction of constructive notice" within the context of the good faith defense. (*Lewis*, *supra*, 30 Cal.App.4th at p. 1859.) "'Fraudulent intent,' 'collusion,' 'active participation,' 'fraudulent scheme'—this is the language of *deliberate wrongful conduct*. It belies any notion that one can become a fraudulent transferee by accident, or even negligently." (*Ibid.*) The appellate court noted that the Lewises had made a reasonable inquiry by obtaining a title report and title insurance, and were not liable for the title report's failure to reveal the lis pendens. (*Ibid.*) "Since the Lewises had made precisely the inquiry that the trial court thought they should have made and still knew nothing about the claims against Shipley, the trial court erred in holding that they 'colluded' or 'actively participated' in the claimed fraudulent conveyance. Instead, the court stripped the Lewises of their good faith status by imputing to them knowledge supposedly (but not actually) held by their title insurer concerning the federal lis pendens and the supposed (but not shown by any evidence) negligence of their insurer in failing to find and disclose the lis pendens." (*Ibid.*)

10

In *Annod*, *supra*, 100 Cal.App.4th at page 1291, the plaintiff landlord sued the partners of a defunct law firm for unpaid rent. The landlord claimed the partners had received fraudulent conveyances from the law firm because the law firm paid them partnership draws rather than paying rent. (*Ibid.*) The trial court granted the partners' motions for summary judgment on the ground that the transfers were made in good faith and for reasonably equivalent value. (*Ibid.*) The appellate court affirmed. (*Ibid.*) "Annod [Corporation] cites no authority for the proposition that accepting partnership compensation with the knowledge that lease payments are overdue is tantamount to the participation in a fraudulent scheme. Similarly, Annod cites no authority to the effect that a partner is prohibited from receiving a partnership draw authorized by the relevant partnership documents if the partnership cannot make its rental payments." (*Id.* at pp. 1299-1300.) *Annod* does not directly address the issue whether the good faith defense to an avoidance based on fraudulent conveyance may be based on the transferee's actual knowledge that the transferor had fraudulent intent.

Following the *Lewis* decision, federal courts interpreting California law explored the requirements of the good faith defense.[8] In *Plotkin v. Pomona Valley Imports (In re Cohen)* (B.A.P. 9th Cir. 1996) 199 B.R. 709 (*Cohen*), the bankruptcy court addressed the good faith defense. In that case, the debtor created a "Ponzi scheme," in which he accepted money from individuals to buy high-end cars wholesale. (*Id.* at p. 712.) The debtor then purchased the cars at retail, and had the car dealers deliver them to the purchasers. (*Id.* at pp. 712-713.) When the Ponzi scheme collapsed, a number of

---

[8] While federal decisions are not controlling on matters of state law (*Howard Contracting, Inc. v. G. A. MacDonald Construction Co.* (1998) 71 Cal.App.4th 38, 52), they are relevant to our analysis of a law whose purpose is to make uniform the avoidance of fraudulent transfers among the different states: "This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it." (§ 3439.13.)

the purchasers sought to recover the money they had paid to the debtor (without receiving a high-end car) through the bankruptcy trustee. (*Id.* at p. 713.)

One of the issues on appeal in *Cohen* was whether the car dealers could be forced to return the money they had received from the debtor, or whether they were covered by the good faith defense. The bankruptcy court set forth this summary of the good faith defense: "One lacks the good faith that is essential to the [section 3439.08] defense to avoidability if possessed of enough knowledge of the actual facts to induce a reasonable person to inquire further about the transaction. [Citation.] Such inquiry notice suffices on the rationale that some facts suggest the presence of others to which a transferee may not safely turn a blind eye. [Citations.]" (*Cohen*, *supra*, 199 B.R. at p. 719.) Ultimately, the court determined that the car dealers were not on inquiry notice of the Ponzi scheme, although the debtor had previously filed for bankruptcy, and the purchases made by the debtor before bankruptcy were not avoidable. (*Ibid.*)

In *Cybermedia, Inc. v. Symantec Corp.* (N.D.Cal. 1998) 19 F.Supp.2d 1070, 1075 (*Cybermedia*), the court recognized, "[t]here is a surprising dearth of authority regarding the standard applicable to the good faith requirement under California's version of the UFTA." The *Cybermedia* court held that the proper standard was a combination of the *Lewis* and *Cohen* standards. "The Legislative Committee Comment to California Civil Code § 3439.08 states that a transferee acts without good faith if he or she 'collude[s] with the debtor or otherwise actively participate[s] in the fraudulent scheme of the debtor.' [Citation.] Clearly, then, the *Lewis* court was correct in holding that a transferee who colludes with the debtor or otherwise participates in the fraud lacks good faith. However, the Legislative Committee Comment also states that '[k]nowledge of the facts rendering the transfer voidable would be inconsistent with the good faith that is required of a protected transferee.' [Citation.] This portion of the Comment supports the *Cohen* court's conclusion that a transferee's knowledge of facts evidencing fraud in the transfer may be sufficient to strip the transferee of good faith even in the absence of

12

actual collusion or active participation.  Accordingly, this Court holds that, for purposes of the UFTA, a transferee lacks good faith if he or she (1) colludes with the debtor or otherwise actively participates in the debtor's fraudulent scheme, or (2) has *actual knowledge* of facts which would suggest to a reasonable person that the transfer was fraudulent." (*Cybermedia*, *supra*, at p. 1075.)

Unfortunately, the quotation of the Legislative Committee comment in *Cybermedia* stopped too soon.  The comment continues:  "Knowledge of the voidability of a transfer would seem to involve a legal conclusion.  Determination of the voidability of the transfer ought not to require the court to inquire into the legal sophistication of the transferee." (Legis. Com. com.—Assembly (Revised) 1986 Addition, 12A pt. 2 West's Ann. Civ. Code, *supra*, foll. § 3439.08, p. 377.)  Our formulation of the test seeks to avoid framing the issue in terms of voidability.  Instead, we frame the issue in terms of "fraudulent intent"—a term used in the Legislative Committee comment to section 3439.08.

The *Cybermedia* court correctly made clear that a transferee's duty to probe the transferor's intent must be limited.  "Defendants argue that *Cohen* establishes a much broader 'inquiry notice' standard, essentially contending that a transferee must inquire further into the transaction if he or she has knowledge that the transferor has been accused of wrongful conduct in any of the transferor's prior dealings.  *Cohen* does not support such an interpretation.  The *Cohen* court's statements regarding inquiry notice were based upon the same excerpt from the Legislative Committee Comment cited above, which refers to '*knowledge of facts rendering the transfer voidable*.' [Citation.] Additionally, the standard argued by Defendants simply is not feasible in a commercial context.  In our litigious society, commerce quickly would grind to a halt if every buyer had an affirmative duty to conduct an independent inquiry prior to purchasing an asset merely because the seller was involved in litigation or otherwise was accused of wrongdoing." (*Cybermedia*, *supra*, 19 F.Supp.2d at p. 1075, fn. 7.)

The reasoning of *Cybermedia* has been accepted by a few federal courts as the correct interpretation of the good faith defense—although using different words. A more recent federal court decision interpreting the UFTA explained: "Relying on the first part of the legislative comment, two California intermediate appellate decisions have held that a transferee acts in good faith unless the transferee colluded with the debtor or otherwise participated in the debtor's fraudulent scheme. [Citations.] However, the United States Court of Appeals Bankruptcy Appellate Panel for the Ninth Circuit ('Ninth Circuit BAP') and the United States District Court for the Northern District of California looked to the entire legislative comment and determined that a transferee does not act in good faith under CUFTA [(California's Uniform Fraudulent Transfer Act)] if the transferee '(1) colludes with the debtor or otherwise actively participates in the debtor's fraudulent scheme, or (2) has actual knowledge of facts which would suggest to a reasonable person that the transfer was fraudulent.' [Citations.] [¶] The Court concludes that if the California Supreme Court addressed the issue, it would adopt the position of the Ninth Circuit BAP and the Northern District of California. Viewing the legislative comment in its entirety, a transferee is not entitled to the good faith defense if it colludes with the debtor or participates in the fraudulent scheme. A transferee's good faith defense also may fail if the transferee had actual knowledge of facts which would suggest to a reasonable person the transfer was fraudulent." (*Brincko v. Rio Props.* (D.Nev., Jan. 14, 2013, No. 2:10-CV-00930-PMP-PAL) 2013 U.S.Dist. Lexis 5986, pp. *51-*52 (*Brincko*); see *SEC v. Forte* (E.D.Pa., May 16, 2012, Civil No. 09-63) 2012 U.S.Dist. Lexis 68209, p. *19; *Guzman v. Pinch* (Bankr. N.D.Cal., Feb. 4, 2011, No. 05-51833 CN) 2011 Bankr. Lexis 357, p. *17.)

It appears to us that the federal courts started with a standard in *Cohen* that could reasonably be read as "inquiry notice." Then, in *Cybermedia*, the court recognized that *Cohen*'s analysis needed to be limited to actual knowledge. Ultimately, in *Brincko*, the court interpreted the knowledge element as "actual knowledge of facts which would

14

suggest to a reasonable person the transfer was fraudulent." (*Brincko*, *supra*, 2013 U.S.Dist. Lexis 5986 at p. *52.) We read *Brincko* as requiring *actual* knowledge by the transferee of a fraudulent intent on the part of the transferor—not merely *constructive* knowledge or inquiry notice. To that extent, we agree with *Brincko*'s construction of the proper test for application of the good faith defense. However, our formulation of the test (1) does not use the words "suggest to a reasonable person" because that phrase might imply inquiry notice—a concept rejected in *Lewis* and *Brincko*—and (2) avoids use of the words "voidable" and "fraudulent transfer" because those concepts are inconsistent with the Legislative Committee comment to section 3439.08. Accordingly, we hold that a transferee does not take in good faith if the transferee had actual knowledge of facts showing the transferor had fraudulent intent.

### D. *Application of Standard of Proof to This Case*

We turn next to whether Security One or Urban Financial, based on the facts known to them, had actual knowledge of the transferor's fraudulent intent when making the reverse mortgage loan. For the following reasons, we conclude that such actual knowledge was not present.

We begin by reiterating that no one at Security One or Urban Financial was aware of Nautilus's abstract of judgment before the reverse mortgage loan was funded or sold to Urban Financial. That was the fault of First American alone, and Security One would not have gone forward with the reverse mortgage loan had it been aware of the abstract of judgment.

Nautilus contends that several "badges of fraud" tainted the transfer of Stanley's interest in the Property to Chao Chen, and gave Security One and/or Urban Financial notice that the reverse mortgage loan was in aid of a fraudulent conveyance.[9]

---

[9] The so-called badges of fraud are described in section 3439.04, subdivision (b): "In determining actual intent under paragraph (1) of subdivision (a),

15

Here, the transfer was to an insider (from Stanley to Chao Chen), was not made in exchange for financial consideration, and occurred shortly after Nautilus obtained its judgment against Stanley. As explained in evidence adduced by Security One and Urban Financial, however, the first two of these facts are common in many reverse mortgage loan situations, and would not necessarily alert a reasonable lender that there was fraudulent intent in connection with the reverse mortgage loan.

Lisa Hatfield, Security One's processing manager who supervised the approval of Chao Chen's loan application, testified the fact that a reverse mortgage loan is being used to pay off someone else's debt is not a concern "as long as the loan isn't delinquent."

The underwriter on the loan expressed concern that Chao Chen was placed on title immediately before he applied for the reverse mortgage loan, and asked that Chao Chen provide proof of occupancy, by means of a Social Security Administration award letter, a bank statement, and utility statements. Security One's concern was whether Chao Chen lived in the Property, as that is a HUD requirement.

In response, Chao Chen provided a letter explaining that he had purchased the Property under his sons' names because at the time he bought it, his income and

consideration may be given, among other factors, to any or all of the following: [¶] (1) Whether the transfer or obligation was to an insider. [¶] (2) Whether the debtor retained possession or control of the property transferred after the transfer. [¶] (3) Whether the transfer or obligation was disclosed or concealed. [¶] (4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit. [¶] (5) Whether the transfer was of substantially all the debtor's assets. [¶] (6) Whether the debtor absconded. [¶] (7) Whether the debtor removed or concealed assets. [¶] (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred. [¶] (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred. [¶] (10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred. [¶] (11) Whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor."

16

credit score were insufficient to qualify for a loan. Chao Chen also provided copies of his W-2's from 2006, a 2012 statement from the Social Security Administration, and a homeowners insurance premium notice for 2012, all of which show the Property address as Chao Chen's address.

Evidence at trial showed it was not unusual for a family member to transfer his or her interest in a property to another family member to facilitate a reverse mortgage loan. Before funding a reverse mortgage loan, the lender would review the file to determine whether the property was distressed by looking to see if the existing mortgage was past due or being foreclosed on, no matter in whose name the mortgage was held. That information would be found in mortgage payoff statements. In this case, there was nothing in the paperwork to indicate the Property was distressed.

Mortgage statements provided before the reverse mortgage loan was funded in April 2012 showed that Stanley and Peter were several months behind on the mortgage as of February 2012, and the payoff statement for the CitiMortgage loan showed a credit of $150 for delinquency expenses. Stanley and Peter had therefore been delinquent on their account. But Stanley and Peter had brought the existing mortgage current as of March 2012, and were current at the time the reverse mortgage loan was funded.

The lack of reasonably equivalent consideration is a badge of fraud under the UFTA. (§ 3439.04, subd. (b)(8).) Stanley and Peter transferred their ownership of the Property to Chao Chen to facilitate the reverse mortgage loan with no exchange of cash from Chao Chen. The lack of consideration in an intrafamily transfer of property to obtain a reverse mortgage loan is not unusual, however. Within the reverse mortgage industry, as long as the title is transferred into the name of the individual obtaining the reverse mortgage loan, and HUD guidelines are met, there is no issue with the lack of consideration as between family members.

Taking steps to conceal a debtor's transfer of property is a badge of fraud. (§ 3439.04, subd. (b)(3).) The transfer of title from Stanley and Peter to Chao Chen took

17

place in two steps because, if Stanley and Peter had transferred their interest to Chao Chen before the reverse mortgage loan was funded, the current mortgage holders would have required that they be paid off immediately, which would have prevented the reverse mortgage loan transaction from progressing. In any event, as part of the funding of the loan, the existing mortgages were paid in full.

Security One was aware that, in addition to the two existing mortgages on the Property, the reverse mortgage loan funds would be used to pay off a preexisting judgment lien against Stanley. The judgment against Stanley showed he had been sued before the transfer was made. (§ 3439.04, subd. (b)(4).) Further, the timing of the judgment showed that Stanley had incurred a legal and enforceable debt that he had not paid off for more than a year. "A debtor that is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute is presumed to be insolvent. The presumption imposes on the party against which the presumption is directed the burden of proving that the nonexistence of insolvency is more probable than its existence." (§ 3439.02, subd. (b).) Security One and Urban Financial did not have a duty to conduct further inquiry merely because of Stanley's previous litigation. (*Cybermedia*, *supra*, 19 F.Supp.2d at p. 1075, fn. 7 ["In our litigious society, commerce quickly would grind to a halt if every buyer had an affirmative duty to conduct an independent inquiry prior to purchasing an asset merely because the seller was involved in litigation or otherwise was accused of wrongdoing."].)

To sum up, Urban Financial and Security One established the existence of the good faith defense by proving they did not have actual knowledge of the transferor's fraudulent intent. They established the arguable badges of fraud relied on by Nautilus appeared normal, not fraudulent, for reverse mortgage lending. Having concluded the good faith defense was established, we turn to the issue whether the trial court erred in prioritizing the parties' security interests in the Property.

18

## II.

### *THE TRIAL COURT DID NOT ERR IN GRANTING EQUITABLE SUBROGATION.*

In its statement of decision, the trial court found that a portion of Urban Financial's reverse mortgage lien was senior to Nautilus's abstract of judgment, based on the fact that the funds from the reverse mortgage loan were used to pay off the liens on the Property that were senior to Nautilus's abstract of judgment.[10] Whether the trial court properly granted equitable subrogation to Urban Financial is reviewed for abuse of discretion. (*Valley Crest Landscape Development, Inc. v. Mission Pools of Escondido, Inc.* (2015) 238 Cal.App.4th 468, 482.)

In the absence of equitable subrogation, Nautilus's abstract of judgment would have priority over the entirety of Urban Financial's reverse mortgage lien because Nautilus's abstract of judgment was recorded first. "'California follows the "first in time, first in right" system of lien priorities. [Citation.]' [Citation.] . . . The doctrine of equitable subrogation is an exception to the first in time, first in right rule and applies in those situations where equity requires a different result. [Citation.] [¶] The Supreme Court stated the general rule applicable to a lender's entitlement to equitable subrogation almost 84 years ago: '"One who advances money to pay off an encumbrance on realty at the instance of either the owner of the property or the holder of the incumbrance, either on the express understanding, or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, is not a mere volunteer; and in the event the new security is for any reason not a first lien on the property, the holder of such security, if not chargeable with culpable and inexcusable

---

[10] The total amount spent by Urban Financial to buy the reverse mortgage loan from Security One was $422,302.21. Of that, $308,576.72 was used to pay off preexisting debts. That portion of the reverse mortgage lien was equitably determined to be senior to Nautilus's lien based on the abstract of judgment. The remaining portion of the reverse mortgage lien, $113,725.49, is junior to the Nautilus judgment lien. There is no argument on appeal about the priority of that portion of the reverse mortgage lien.

19

neglect, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equities of others would be prejudiced thereby, and to this end equity will set aside a cancellation of such security, and revive the same for his benefit." [Citations.]' [Citations.] In doing so, equity gives effect to the intentions of the parties. [Citation.]" (*JP Morgan Chase Bank, N.A. v. Banc of America Practice Solutions, Inc.* (2012) 209 Cal.App.4th 855, 860 (*JP Morgan*).)

HUD regulations require that a reverse mortgage loan be secured by a first deed of trust. The reverse mortgage loan to Chao Chen paid off two preexisting deeds of trust and a judgment lien that had priority over Nautilus's judgment lien. As we have explained, neither Security One nor Urban Financial was """"chargeable with culpable and inexcusable neglect"""" (*JP Morgan*, *supra*, 209 Cal.App.4th at p. 860). Therefore, the trial court did not abuse its discretion by granting equitable subrogation to Urban Financial.

Nautilus argues that equitable subrogation should not apply because First American was chargeable with culpable and inexcusable neglect, and First American was funding the litigation on behalf of Urban Financial pursuant to the title insurance policy. First American accepted Urban Financial's tender of defense and indemnity without a reservation of rights. First American hired counsel for Urban Financial and controlled the defense of the case on its behalf. First American exercised its right to prosecute any action necessary to prevent or reduce loss or damage to its insured by filing a cross-complaint in Urban Financial's name, seeking, among other things, equitable subrogation.

The ability of Urban Financial to recover from First American due to First American's error in failing to identify Nautilus's abstract of judgment cannot defeat Urban Financial's claim for equitable subrogation. (*Branscomb v. JPMorgan Chase Bank, N.A.* (2014) 223 Cal.App.4th 801, 809-810; *JP Morgan*, *supra*, 209 Cal.App.4th at pp. 861-862; *Katsivalis v. Serrano Reconveyance Co.* (1977) 70 Cal.App.3d 200, 213.)

20

First American's knowledge or neglect cannot be imputed to Urban Financial to bar Urban Financial from equitable relief. (See *Lewis*, *supra*, 30 Cal.App.4th at pp. 1856, 1868-1870.)

## III.

### *THE TRIAL COURT DID NOT ERR IN GIVING PRIORITY TO NAUTILUS'S LIEN BASED ON THE CHAO CHEN JUDGMENT.*

The judgment provides, in relevant part: "Nautilus is awarded a money judgment against Chao Chen Yang in the amount of $153,212 at 10% interest from the time of the transfer until paid, *and declares such money judgment a lien upon Chao Chen Yang's 50% interest in the Subject Property, subordinate to Urban Financial's equitable lien rights as to such 50% interest, and senior to the lien of Urban Financial's Deed of Trust* . . . upon such 50% interest." (Italics added.) That money judgment was entered on Nautilus's claim against Chao Chen for conspiracy to fraudulently convey the Property. Neither the propriety of the judgment against Chao Chen nor its amount is before us. On appeal, Urban Financial challenges the trial court's ability to create a lien through the device of a written judgment.

"Except as otherwise provided by statute, a judgment lien on real property is created under this section by recording an abstract of a money judgment with the county recorder." (Code Civ. Proc., § 697.310, subd. (a).) Nautilus does not identify any other statute permitting the trial court to create a judgment lien on real property by stating so in a judgment. Nautilus does, however, cite us to the UFTA provision regarding the supremacy of California's general principles of law and equity: "Unless displaced by the provisions of this chapter, the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement its provisions." (§ 3439.12.)

21

Whether the trial court properly issued a lien requires us to interpret the statutes governing judgment liens on real property. We independently determine the proper interpretation of a statute. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *LaChance v. Valverde* (2012) 207 Cal.App.4th 779, 784.)

In *Behniwal v. Mix* (2007) 147 Cal.App.4th 621, 623-624, this court held that in a judgment granting specific performance to home buyers, the trial court may not authorize the home buyers to reduce the purchase price by the amount of the attorney fees awarded to them against the sellers. This court labelled the trial court's act as an "Ad Hoc Creation of 'Super-Liens,'" without further definition or explanation. (*Id.* at p. 635.)

Here, the trial court did not create an ad hoc super-lien. As explained *ante*, the court could not create a lien through the judgment; the lien could only be created by Nautilus's recording of an abstract of judgment. What the trial court obviously intended to do was to use its equitable powers to grant Nautilus's judgment lien against Chao Chen priority over Urban Financial's lien on the reverse mortgage loan deed of trust (to which the court added Urban Financial's attorney fee award against Chao Chen).

Such an action was entirely within the trial court's equitable authority. That equitable protection only has effect if Nautilus timely records an abstract of its judgment. If Nautilus never records an abstract of judgment, there is no lien to prioritize. And if Nautilus delays unnecessarily in recording an abstract of judgment, the basic principles of equity would prevent Nautilus from benefitting.[11]

---

[11] The portion of the judgment adding Urban Financial's award of attorney fees to the lien of its reverse mortgage deed of trust is proper because the reverse mortgage deed of trust had a provision for the award of attorney fees. (*Wutzke v. Bill Reid Painting Service, Inc.* (1984) 151 Cal.App.3d 36, 46-47.)

22

Postjudgment, Stanley and Chao Chen had undivided one-half interests in the Property, subject to the following liens, in order of priority:

1. Urban Financial's equitable lien in the amount of $308,576.72, plus interest, on 100 percent of the Property;

2. Nautilus's judgment lien in the amount of $8 million, on Stanley's one-half interest in the Property;

3. Nautilus's judgment lien in the amount of $153,212, plus interest, on Chao Chen's one-half interest in the Property;

4. Urban Financial's deed of trust, in the amount of $113,725.49, plus attorney fees incurred in this case, on 100 percent of the Property; and

5. Urban Financial's judgment in the amount of $153,212, plus interest, against Stanley, on Stanley's one-half of the Property.

## IV.

*THE TRIAL COURT DID NOT ERR BY DETERMINING THAT NAUTILUS'S $8 MILLION LIEN APPLIES TO ONE-HALF OF THE PROPERTY.*

Urban Financial argues that the trial court erred by ordering that the $8 million Nautilus judgment lien applies to one-half of the Property, rather than one-third. Urban Financial reasons that Stanley had only a one-third interest in the Property at the time Nautilus's abstract of judgment was recorded, meaning that is the greatest portion of the Property to which the Nautilus abstract of judgment attaches.[12]

Because of Stanley's fraudulent conveyance of the Property to Chao Chen, the trial court voided the February 27, 2012 transfer of a portion of Stanley's interest in the Property to Chao Chen. Therefore, when Nautilus recorded its abstract of judgment,

_____

[12] Before February 27, 2012, Stanley had owned a one-half interest in the Property; on that date, he and Peter each transferred a portion of their ownership to Chao Chen. Nautilus recorded its abstract of judgment on April 4, 2012, at a time when Stanley owned a one-third interest in the Property.

23

it was applicable to Stanley's one-half interest in the Property.  The trial court did not err in so concluding.


DISPOSITION

The judgment is affirmed.  In the interests of justice, because both appellants prevailed in part, neither party shall recover costs on appeal.



FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


IKOLA, J.